FILED
COURT OF APPEALS
DIVISION II

2015 FEB 24 AM 9: 27

STATE OF WASHINGTON

BY_____
DEPUTY

## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| ANTHONY BROWN, | No. 45097-6-II |
| Appellant, | |
| v. | |
| GOLDEN STATE FOODS CORP. and QUALITY CUSTOM DISTRIBUTION SERVICES, INC., | UNPUBLISHED OPINION |
| Respondents. | |

JOHANSON, C.J. — Anthony Brown appeals from the trial court's order granting summary judgment to Golden State Foods Corporation (GSF) on Brown's claims of disability discrimination, retaliatory discharge, and failure to provide rest or meal breaks. Brown also appeals from the trial court's order denying Brown's summary judgment motion on the same claims, Brown's motion to compel discovery, and Brown's motion to strike evidence. We agree with Brown in part. Because Brown establishes a genuine issue of material fact to warrant a trial on his failure to accommodate claim to survive summary judgment, we reverse the trial court on that ground only. In all other respects, we affirm the trial court.

## FACTS

### I. BACKGROUND AND BROWN'S EMPLOYMENT

Brown suffered a back injury in 1980 and has had two support rods in his spine ever since. Nevertheless, Brown has "always been able to keep up with the various jobs [he has] had." Clerk's Papers (CP) at 287.

In 2009, Brown applied for a delivery truck driver position with GSF.[1] The application process included a physical examination, which included physical tests such as lifting weights. Brown passed these tests without issue. Brown's examining physician noted Brown's injury but medically cleared him to work as a driver without any modifications to his job duties. During Brown's road test, he told a supervisor that he "had no medical restrictions, as such, and that [he] did not think this would be a problem but that [he] may not be as fast as other drivers." CP at 36.

On May 20, 2009, GSF hired Brown as a probationary employee for a period of 90 days. Brown's job was to deliver coffee-related products to Starbucks stores. Shortly thereafter, Brown's supervisors began complaining about Brown's slow work. Brown admitted that he was "a little bit slower bending and moving around" as a result of his injury, CP at 37, 139, and it made him unable to "jump in and out of the trucks and off load heavy products, often times at shoulder level, without producing pain and discomfort." CP at 288.

Brown told his supervisors about the injury and asked for a mechanical lift for his truck, which he asserted would help him to work faster and "prevent [his] back from acting up." CP at

---

[1] GSF's affiliated corporation, Quality Custom Distribution Services, Inc., is also joined as a respondent, and we refer to both collectively as GSF.

36. A majority of GSF's trucks were equipped with such mechanical lifts. Brown also asked to be transferred to a warehouse job. Both of his requests were ignored.

Unbeknownst to his supervisors, while working for GSF, Brown worked through his lunch and rest breaks. GSF's drivers were told to "just keep working and get the shift done." CP at 135. GSF did not pay Brown for his lunch or rest breaks.

## II. TERMINATION AND INJURY

Brown had been working for approximately two months when, on August 1, GSF manager Eric Lard directed the supervisors to "terminate Anthony Brown's employment due to his poor performance before the 90 day probationary period under the collective bargaining agreement had passed." CP at 188. In a series of internal e-mails, the supervisors commented on Brown's performance, noting that "[w]e have had to send help to him every night. . . . I don't really know what options we have since we are short drivers[sic] but U. Village his[sic] kicking his butt." CP at 509. The supervisors agreed to keep Brown on the schedule for another week, "and we can get rid of him after 8/8, unless Eric wants to get rid of him earlier than that." CP at 509.

Brown received a call to drive on the night of August 9 and the early morning of August 10 when another driver called in sick. On that night, he had more stops and more items to deliver than usual. Sometime between 1 and 2 AM, Brown injured his back while transferring crates of milk from the bed of the truck to the dolly. Brown called his night supervisor, Chuck Brewer, to help him complete his route. Brewer told Brown that he had to continue working and complete the route "because they could not have a 'late.'" CP at 36. Brewer also told Brown to come in the morning after completing the route to receive Department of Labor and Industries (L&I) paperwork for the injury.

3

When Brown came in on the morning of August 10, the L&I paperwork was not ready. Brown went home to rest and did not return until the evening of August 11, when a supervisor informed Brown that he was being terminated.[2] Brown again asked for a warehouse job, but the supervisor refused to grant the request.

Brown went directly to the hospital and filed a claim for workers' compensation. As of the date of the summary judgment, Brown had not been medically released to work since his on-the-job injury and remained on workers' compensation.

PROCEDURAL HISTORY

Brown sued GSF asserting six causes of action: disability-based hostile work environment, negligent infliction of emotional distress, failure to accommodate a disability, age discrimination, retaliatory discharge, and failure to provide meal and rest breaks. In the course of discovery, Brown made an interrogatory requesting that GSF identify

> each cellular telephone or other mobile communications device and account that you have used at any time between August 10, 2009 and the present day by telephone number or address, together with each email address and/or account that you have used between August 10, 2009 and the present day as well as each land line telephone number or account that you have used in this same time frame.

CP at 4. Brown intended to have these devices examined by an electronics expert, subject to a protective order. Brown also requested production of "all emails, text messages or other electronic communications made . . . between August 10, 2009 and the present day that relate to the Plaintiff's Complaint or your Answer or any related issue in this litigation." CP at 4. Finally, Brown requested his own trip records from his work for GSF, as well as the trip records and personnel

---

[2] This was the 83rd day of Brown's 90-day probationary period.

files of several other drivers. GSF responded that it had already produced e-mails "contemporaneous with and relating to Mr. Brown's termination," as well as all of Brown's trip records that "could be located after a reasonable search." CP at 5-6. GSF refused to comply with Brown's other discovery requests, arguing that they were overbroad, unduly burdensome, and sought information that was not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

Brown moved to compel discovery.[3] Brown argued that he needed access to GSF's communications devices in order to discover evidence that Brown's supervisors knew about his on-the-job injury. Brown also argued that he needed the information of his former co-workers to prove that his performance was no worse than that of the other drivers. The trial court denied Brown's motion to compel, except as to the trip records of Brown's fellow drivers and the contact information of Brown's co-workers.

Subsequently, the parties cross moved for summary judgment. Brown also brought a motion to strike his supervisors' internal e-mails as "self-serving, hearsay documents." CP at 423. All three motions were argued and decided on June 21, 2013. Brown's counsel argued that his motion to strike should be granted because the e-mails were allegedly falsified:

> MR. DEJEAN: They can testify to these things but it's just as if they were write-out, you know. E-mail is no different, just write these things out. I mean, it's -- you know, it's just a hearsay document that --
> . . . .
> THE COURT: Anything else evidentiary-wise on that issue?
> MR. DEJEAN: No, other than the plaintiff wasn't given an opportunity to contest them, Judge. If we could have gotten into that E-mail system, I'm confident

---

[3] Brown's motion to compel also concerned several other discovery requests that GSF contested. Because Brown does not raise these requests on appeal, we do not address them.

5

No. 45097-6-II

that these things were -- I mean, this is Golden State Foods, this is McDonalds.
That HR department is probably the Harvard and Yale of HR departments.

Report of Proceedings (RP) at 5. Citing CR 56(f), the trial court offered Brown a continuance so he could discover more e-mails. Brown declined. The court denied Brown's motion to strike and heard argument on the cross motions for summary judgment. The court denied summary judgment to Brown and granted summary judgment to GSF on all claims, ruling that

> [f]irst, I don't believe that you do have a duty to accommodate a disability after termination, that's number one. I believe that the undisputed evidence is that there was no notice of a disability as required by law, medically, prior to the termination. And the undisputed evidence is that the decision to terminate came on August 1, and a week or more, about ten days before the actual communication of termination to the plaintiff. For those reasons, I think that dismissal of this case is appropriate, denying plaintiff's motion for summary judgment, granting defendants' motion for summary judgment.

RP at 17-18. Brown timely appealed the trial court's grant of summary judgment in GSF's favor, its denial of summary judgment in Brown's favor, its denial of Brown's motion to strike, and its denial of Brown's motion to compel.

ANALYSIS

We address Brown's procedural claims first because our review of the trial court's evidentiary decisions will define the scope of the record. *Sunbreaker Condo. Ass'n v. Travelers Ins. Co.*, 79 Wn. App. 368, 373, 901 P.2d 1079 (1995), *review denied*, 129 Wn.2d 1020 (1996). Following that, we address Brown's substantive claims as to failure to accommodate, hostile work environment, retaliatory discharge, and failure to provide rest and meal breaks.

I. STANDARD OF REVIEW

We review trial court evidentiary rulings, including discovery rulings made in the course of summary judgment proceedings, for an abuse of discretion. *Sunbreaker*, 79 Wn. App. at 372.

6

The court abuses its discretion only if its decision is "manifestly unreasonable or based on untenable grounds or untenable reasons." *In re Marriage of Littlefield*, 133 Wn.2d 39, 46-47, 940 P.2d 1362 (1997). In other words, the court abuses its discretion if no reasonable person would have ruled as the court did. *In re P'ship of Rhone & Butcher*, 140 Wn. App. 600, 606, 166 P.3d 1230 (2007), *review denied*, 163 Wn.2d 1057 (2008).

After reviewing the trial court's evidentiary rulings and defining the scope of the record, we review the summary judgment order de novo. *Sunbreaker*, 79 Wn. App. at 373. We will affirm the summary judgment only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Qwest Corp v. City of Bellevue*, 161 Wn.2d 353, 358, 166 P.3d 667 (2007). On review of a summary judgment, the evidence is viewed in the light most favorable to the nonmoving party, and all reasonable inferences from that evidence are drawn in favor of the nonmoving party. *Qwest*, 161 Wn.2d at 358. However, the party opposing summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." CR 56(e).

## II. MOTION TO COMPEL

Brown argues that his requested discovery was necessary in order to discover evidence that his supervisors' e-mails were falsified, to discover trip records that GSF had been unable to locate, and to demonstrate that Brown's performance was as good as that of any other employee. GSF argues that Brown failed to plead facts to support his discovery requests and that Brown waived the issue by failing to request a continuance. We agree with GSF and affirm the trial court.

A party may obtain discovery on any nonprivileged matter that is relevant to the subject matter of the pending action regardless of whether it relates to the claim or defense of the party

seeking discovery or to the claim or defense of any other party. CR 26(b)(1). The requested discovery must be reasonably calculated to lead to the discovery of admissible evidence. CR 26(b)(1). The trial court shall limit discovery requests that the court finds to be "unreasonably cumulative or duplicative, or . . . obtainable from some other source that is more convenient, less burdensome, or less expensive" or that is "unduly burdensome or expensive, taking into account the needs of the case, the amount in controversy, limitations on the parties' resources, and the importance of the issues at stake in the litigation." CR 26(b)(1)(A), (C).

## A. COMMUNICATIONS DEVICES

Brown's request for far-reaching "access to the Defendant's computer system" was an unduly burdensome request. Br. of Appellant at 17. Brown proposed to search every "mobile communications device and account" that GSF had used between August 10, 2009, and the date of the motion—April 26, 2013. CP at 4. For GSF to fulfill this request would be highly burdensome and intrusive. The requested discovery would expose all of GSF's internal dealings over an extended period of time without regard to its relevance in Brown's case. Brown argues this extensive discovery request is justified because he asserts that e-mails not yet produced by GSF would have established that "Plaintiff had notified at least one of his supervisors that he had been injured on the night of his last delivery route." CP at 4. He further asserts that the e-mails that GSF produced, which established that the decision to terminate Brown was made on August 1, were falsified.

Brown's first rationale fails because even if Brown's supervisors knew he was injured on the night of Brown's injury, he still cannot establish a genuine issue of material fact, as explained below. Therefore, his supervisors' knowledge of his injury was not relevant as a matter of law.

8

Brown's second rationale fails because he offered no explanation of what evidence he hoped to find that would show that GSF had either falsified or hidden e-mails. Brown's reliance on *Mechling v. City of Monroe*, 152 Wn. App. 830, 222 P.3d 808 (2009), *review denied*, 169 Wn.2d 1007 (2010), and *O'Neill v. City of Shoreline*, 170 Wn.2d 138, 240 P.3d 1149 (2010), is misplaced. These cases involved the disclosure of electronic records and e-mail metadata under the Public Records Act, ch. 42.56 RCW. GSF is not a government entity and its electronic communications are not public records. Neither *Mechling* or *O'Neill* stands for the proposition that the discovery Brown seeks is available under ordinary civil discovery standards.

A court does not err when it denies a request for a CR 56(f) continuance that is based on "'mere speculation and a fishing expedition.'" *In re Estate of Fitzgerald*, 172 Wn. App. 437, 449, 294 P.3d 720 (2012), *review denied*, 177 Wn.2d 1014 (2013). Here, Brown's motion to compel was based on speculation, and the discovery he requested would constitute a highly general fishing expedition. The trial court did not abuse its discretion by denying the motion to compel.

### B. GSF INTERNAL E-MAILS

Brown requested production of "all . . . electronic communications made . . . between August 10, 2009 and the present day that relate to the Plaintiff's Complaint or your Answer or any related issue in this litigation." CP at 4. GSF had already searched for and produced all e-mails that Brown's supervisors had exchanged relating to Brown. Brown's theory that GSF had further e-mails that it had withheld is, again, mere speculation. The trial court did not abuse its discretion by denying a motion to compel discovery that GSF had already produced.

## C. BROWN'S TRIP RECORDS

Prior to Brown's motion to compel, GSF had already "searched for and produced the requested Trip Records to the extent they could be located after a reasonable search." CP at 6. Brown's dissatisfaction with this response resulted in the motion to compel GSF's production of all of Brown's trip records or, in the alternative, for an order allowing Brown to search GSF's records himself. Brown believed that GSF was hiding the trip record for the night of August 9 and morning of August 10, the route during which Brown was injured, and that his discovery request would disgorge the missing record. GSF had produced all of the records it could find after a reasonable search, and the trial court did not abuse its discretion by denying the motion to compel.

## D. PERSONNEL RECORDS

Finally, Brown attempted to discover the trip records of other drivers, as well as the personnel files of the drivers' helpers and Brown's supervisors. The trial court granted Brown's motion to compel as to the trip records of Brown's fellow drivers, as well as the contact information of the helpers and supervisors. Brown used the trip records to support his theory that his performance equaled that of other drivers employed by GSF. Brown also contacted his co-workers and supervisors and obtained statements and depositions that were helpful to his case. Brown received most of the discovery he requested. Brown fails to articulate what the full personnel records of Brown's helpers and supervisors would have added to the litigation. Any relevant information contained in these personnel records was obtainable from other sources—that is, the named parties themselves—and was not a proper subject of discovery under CR 26(b). The trial court did not abuse its discretion in denying in part the motion to compel.

Brown fails to show any abuse of discretion in the trial court's ruling on his motion to compel. Accordingly, we affirm the trial court's ruling on Brown's motion to compel.

### III. MOTION TO STRIKE

Brown argues that the internal e-mails GSF produced were "self-serving statements" that the trial court should have excluded. Br. of Appellant at 16. GSF argues that Brown waived the issue by failing to request a continuance and that the e-mails were hearsay admissible under the state-of-mind and business records exceptions. We agree with GSF and affirm the trial court.

There is no evidentiary rule excluding "self-serving" statements. *State v. Pavlik*, 165 Wn. App. 645, 651-54, 268 P.3d 986 (2011) (exploring the history of ER 801), *review denied*, 174 Wn.2d 1009 (2012). Rather, the term "self-serving" has been used as "a shorthand way of saying that it was hearsay and did not fit into any of the recognized exceptions to the hearsay rule." *State v. King*, 71 Wn.2d 573, 577, 429 P.2d 914 (1967). Accordingly, we employ a hearsay analysis.

A statement is hearsay if it is made outside of the trial or hearing and offered in evidence to prove the truth of the matter asserted. ER 801(c). A statement is not excluded by the hearsay rule if it is offered for a reason *other* than to prove the truth of the matter asserted, such as intent, plan, motive, or design. ER 803(a)(3). GSF did not offer its internal e-mails in order to prove that "we can get rid of [Brown] after 8/8"—that is precisely what GSF did. CP at 509. Rather, GSF offered its internal e-mails to show a then-existing plan to terminate Brown's employment. This falls squarely within the ER 803(a)(3) exception, and the trial court did not abuse its discretion by denying Brown's motion to strike.

## IV. FAILURE TO ACCOMMODATE

Brown argues that GSF failed to accommodate his prior back injury by failing to provide him with a mechanical lift and failed to accommodate his on-the-job injury by failing to offer him a warehouse job. GSF argues that it owed Brown no duty to accommodate because Brown did not have a qualifying disability that substantially limited his ability to perform the job. We reject GSF's arguments, agree with Brown in part, and reverse the trial court on Brown's failure to accommodate claim based on his past injury.

Summary judgment is appropriate where the plaintiff fails to raise a genuine issue of fact on one or more of the statutory elements of a failure to accommodate claim. *Johnson v. Chevron U.S.A., Inc.*, 159 Wn. App. 18, 27-29, 244 P.3d 438 (2010), *review denied*, 171 Wn.2d 1020 (2011).

### A. PRIOR BACK INJURY

GSF's argument is that Brown failed to establish a qualifying disability that had a substantially limiting effect. First, Brown must establish that his disability is a "sensory, mental, or physical impairment" and that it "(i) [i]s medically cognizable or diagnosable; or (ii) [e]xists as a record or history; or (iii) [i]s perceived to exist whether or not it exists in fact." RCW 49.60.040(7)(a). Brown may then demonstrate the existence of a qualifying disability in one of two ways:

> (i) The impairment must have a substantially limiting effect upon the individual's ability to perform his or her job, the individual's ability to apply or be considered for a job, or the individual's access to equal benefits, privileges, or terms or conditions of employment; or
> (ii) The employee must have put the employer on notice of the existence of an impairment, and medical documentation must establish a reasonable likelihood that engaging in job functions without an accommodation would aggravate the impairment to the extent that it would create a substantially limiting effect.

12

RCW 49.60.040(7)(d). A limitation that only has a "trivial effect" is not a substantial limitation that entitles an employee to a reasonable accommodation. RCW 49.60.040(7)(e).

Brown suffered a back injury in 1980 and has had two support rods in his spine ever since. In 2009, Brown applied for a delivery truck driver position with GSF. The application process included a physical examination, which included physical tests such as lifting weights. Brown passed these tests without issue. Brown's examining physician noted Brown's injury but medically cleared him to work as a driver without any modifications to his job duties. During Brown's road test, he told a supervisor that he "had no medical restrictions, as such, and that [he] did not think this would be a problem but that [he] may not be as fast as other drivers." CP at 36.

But, after he performed the work for some time, Brown experienced problems with his back. Brown declared that he was "a little bit slower bending and moving around" as a result of his injury, CP at 37, 139, and it made him unable to "jump in and out of the trucks and off load heavy products, often times at shoulder level, without producing pain and discomfort." CP at 288. It is clear that both Brown and GSF could have perceived that he had a disability that was affecting his performance. Brown informed GSF of these issues, requested a mechanical lift, and was slow enough that his supervisors were so dissatisfied with the slowness of his work that he was fired. We hold that this evidence is sufficient to raise a genuine dispute as to a material fact—whether Brown suffered a qualifying disability that had a substantially limiting effect on his ability to perform his job.

Although it is true that many of GSF's drivers would finish their routes late, this observation serves to raise a question of fact as to whether it was Brown's disability that caused the substantially limiting effect on his work or if his subpar performance was related to something

13

else. And even though there were occasions when Brown would complete his routes in less time than other drivers, there were other nights (like the night he was injured on the job) when he had more items to deliver and more stops to make and he was unable to finish on time. This evidence creates at least a genuine issue of material fact as to whether his disability substantially limited his ability to perform his job.

Because Brown presents a material issue of fact, we reject GSF's arguments and hold that the trial court erred in granting summary judgment to GSF on the issue of GSF's failure to accommodate Brown's pre-existing injury.

## B. ON-THE-JOB INJURY

The parties do not dispute that Brown became disabled when he injured his back during his final delivery route. The issue is whether Brown could work for GSF following his injury. The undisputed evidence establishes that he could not: Brown has not been medically released to perform "any kind of work." CP at 143. No evidence establishes that with appropriate accommodation Brown could have worked for GSF as a driver *or* a warehouse worker. Brown fails to create a genuine issue of material fact as to the failure to accommodate his on-the-job injury, and the trial court did not err in granting summary judgment to GSF on Brown's reasonable accommodation claim or by denying summary judgment to Brown.

## V. HOSTILE WORK ENVIRONMENT

Brown argues that GSF created a disability-based hostile work environment by ignoring his requests for a mechanical lift, telling him to work faster, and assigning him additional deliveries. GSF argues that Brown was not harassed about any actual or perceived disability. We agree with GSF and affirm the trial court.

14

A hostile work environment exists when the plaintiff can prove the following elements:

> (1) that he or she was disabled within the meaning of the antidiscrimination statute, (2) that the harassment was unwelcome, (3) that it was because of the disability, (4) that it affected the terms or conditions of employment, and (5) that it was imputable to the employer.

*Robel v. Roundup Corp.*, 148 Wn.2d 35, 45, 59 P.3d 611 (2002). Harassment affects the terms and conditions of employment only if it is both objectively and subjectively abusive. *Davis v. Fred's Appliance, Inc.*, 171 Wn. App. 348, 362, 287 P.3d 51 (2012) (citing *Adams v. Able Bldg. Supply, Inc.*, 114 Wn. App. 291, 297, 57 P.3d 280 (2002)). "Casual, isolated or trivial manifestations of a discriminatory environment do not affect the terms or conditions of employment to a sufficiently significant degree to violate the law." *Washington v. Boeing Co.*, 105 Wn. App. 1, 10, 19 P.3d 1041 (2000).

In order to determine whether the employer's conduct affected the terms and conditions of employment, the courts "look at the totality of the circumstances, including the frequency and severity of harassing conduct, whether it was physically threatening or humiliating or merely an offensive utterance, and whether it unreasonably interfered with the employee's work performance." *Davis*, 171 Wn. App. at 362 (citing *Boeing*, 105 Wn. App. at 10).

Assuming without deciding that Brown was "disabled" at the time of the conduct he complains of,[4] none of GSF's acts created a genuine issue of material fact as to whether or not a hostile work environment exists. First, Brown fails to show that GSF denied him the mechanical lift *because* of his back injury. GSF could have refused to provide Brown with a lift for a number

---

[4] The statute defines "disability" differently outside the context of qualifying for a reasonable accommodation. RCW 49.60.040(7)(a). Accordingly, the above analysis of whether Brown was disabled under RCW 49.60.040(7)(d) does not apply.

of other reasons including financial ones or Brown's status as a probationary employee. Second, Brown fails to show that his supervisors' admonishments to work faster were objectively or subjectively abusive. To the contrary, he admitted during his deposition that his supervisors' requests to speed up were not unusual and constituted a "legitimate request." CP at 130. Finally, Brown fails to show that GSF assigned him additional deliveries *because of* his injury or that receiving additional work constituted abuse. Brown failed to establish a genuine issue of material fact, and the trial court did not err in granting summary judgment on Brown's hostile work environment claim or by denying summary judgment to Brown.

## VI. RETALIATION

Brown argues that GSF unlawfully terminated him in retaliation for his decision to pursue L&I benefits following his on-the-job injury. GSF argues that it decided to terminate Brown for his poor job performance before his injury even occurred. We agree with GSF and affirm the trial court regarding the retaliation claim.

An employer may not terminate an employee in retaliation for pursuing workers' compensation benefits. In order to make a prima facie case of retaliatory discharge, Brown must show that

> 1) [he] exercised the statutory right to pursue workers' benefits under Title 51 RCW or communicated to the employer an intent to do so or exercised any other right under RCW Title 51; 2) [he] was discharged; and 3) there is a causal connection between the exercise of the legal right and the discharge.

*Anica v. Wal-Mart Stores, Inc.*, 120 Wn. App. 481, 490-91, 84 P.3d 1231 (2004). Here, only the causal connection is at issue.

The requisite causal connection cannot exist where the termination *precedes* the exercise of the legal right. Here, the undisputed evidence establishes that GSF decided to terminate Brown

16

on August 1. Lard's uncontroverted evidence was that on August 1, he instructed the supervisors to work together "to terminate Anthony Brown's employment due to his poor performance." CP at 188. Brown's supervisors took this precise action as reflected in e-mails. Brown's termination preceded his claim for workers' compensation—indeed, preceded his injury—by more than a week.

Brown fails to establish a genuine issue of material fact as to the date of his termination. Rather than pleading specific facts that cast the above facts into doubt, he relies on mere speculation that the e-mails were falsified. Brown also asserts that his termination must have been pretextual because his performance was no worse than that of other drivers. But even if Brown is correct in his assertions that he was not terminated for doing poor work, he cannot show that he was terminated *because of* his workers' compensation claim when he was terminated *before* he made that claim. The trial court did not err in granting summary judgment to GSF or by denying summary judgment to Brown on his retaliation claim.

## VII. REST AND MEAL BREAKS

Brown argues that GSF improperly denied him his statutorily mandated rest and meal breaks. GSF argues that it fulfilled its statutory obligations by making the breaks available if Brown wished to take advantage of them. We agree with GSF and affirm the trial court.

Employees must be allowed a meal period of at least 30 minutes, as well as a rest period of not less than 10 minutes for each 4 hours of working time. WAC 296-126-092(1), (4). Rest periods must be on the employer's time and so must meal periods "when the employee is required by the employer to remain on duty on the premises or at a prescribed work site in the interest of the employer." WAC 296-126-092(1). No employee shall be required to work more than five

17

consecutive hours without a meal period nor more than three hours without a rest period. WAC 296-126-092(2), (4). L&I treats meal and rest periods substantially the same and so do the courts. *White v. Salvation Army*, 118 Wn. App. 272, 283, 75 P.3d 990 (2003), *review denied*, 151 Wn.2d 1028 (2004).

By Brown's own admission, he was "allowed lunch and breaks out in the field." CP at 134. Brown worked through his lunch and breaks apparently of his own accord and did not tell his supervisors of his failure to take breaks. Brown points to his manager's admission that "there isn't a specific lunch break written into that schedule." CP at 271. But that is not what the law requires. "[T]here is no affirmative duty on the employer to schedule meal periods for a specific time. The lack of any scheduled meal period is not a violation of WAC 296-126-092(1)." *White*, 118 Wn. App. at 279.

Brown argues that the work demands of his scheduled routes did not leave him time to take a rest or meal break. He points to *Pellino v. Brink's Inc.*, 164 Wn. App. 668, 691, 267 P.3d 383 (2011), where the court held that armored truck drivers were unlawfully denied breaks because they were "always engaged in work activities" during their routes. *Pellino*, 164 Wn. App. at 678. But *Pellino* is distinguishable. In that case, the drivers had specific instructions to remain on guard "'at all times when they are out on their routes, including whenever they are using the bathroom, purchasing food, or eating.'" *Pellino*, 164 Wn. App. at 677. The drivers had specific instructions "not to stop the truck for breaks, but to 'eat on the go.'" *Pellino*, 164 Wn. App. at 678. The drivers were specifically "prohibited from using 'distracting materials' or engaging in any personal activities." *Pellino*, 164 Wn. App. at 694. In contrast, Brown did not even know if GSF had a "policy on taking breaks." CP at 136. Brown fails to submit facts to support his claim that GSF

No. 45097-6-II

specifically prevented him or other drivers from taking their breaks. Therefore, Brown failed to raise a genuine issue of material fact, and the trial court did not err in granting summary judgment to GSF on his meal and rest break claim or by denying summary judgment to Brown. We affirm the trial court regarding his meal and lunch break claim.

Affirmed in part and reversed in part.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

JOHANSON, C.J.

BJORGEN, J. (concurring in part, dissenting in part) — I join in Chief Judge Johanson's majority opinion reversing the grant of summary judgment to Golden State Foods Corporation (GSF) on the issue of its failure to accommodate Anthony Brown's prior injury. With one exception, I also join in the other elements of the majority opinion. I dissent on the issue of rest and meal breaks and would reverse the grant of summary judgment to GSF and the denial of Brown's summary judgment motion on his claim of failure to provide rest or meal breaks.

Brown argues that the scheduling demands of his job effectively deprived him of mandatory rest and meal breaks. GSF argues that it met its obligations by allowing Brown required breaks while working out in the field, which Brown worked through without telling his supervisors.

The legislature has declared that "[t]he welfare of the state of Washington demands that all employees be protected from conditions of labor which have a pernicious effect on their health." RCW 49.12.010. To implement this statute and the provisions of chapter 49.12 RCW, the Department of Labor and Industries (Department) has adopted rules governing rest and meal breaks. Those rules, found at WAC 296-126-092, state in pertinent part that

> (1) Employees shall be allowed a meal period of at least thirty minutes. . . . Meal periods shall be on the employer's time when the employee is required by the employer to remain on duty on the premises or at a prescribed work site in the interest of the employer.
> (2) No employee shall be required to work more than five consecutive hours without a meal period.
> . . .
> (4) Employees shall be allowed a rest period of not less than ten minutes, on the employer's time, for each four hours of working time. Rest periods shall be scheduled as near as possible to the midpoint of the work period. No employee shall be required to work more than three hours without a rest period.

These rules impose mandatory obligations on the employer. *Pellino v. Brink's Inc.*, 164 Wn. App. 668, 688, 267 P.3d 383 (2011). As our Supreme Court held, WAC 246-126-092 "'clearly and unambiguously prohibits working employees for longer than three consecutive hours without a rest period.'" *Wingert v. Yellow Freight Sys., Inc.*, 146 Wn.2d 841, 848, 50 P.3d 256 (2002) (quoting *Wingert v. Yellow Freight Sys., Inc.*, 104 Wn. App. 583, 588, 13 P.3d 677

20

(2000)). *Wingert* applies with equal force to the requirement that on-duty employees "shall be allowed" a total of 30 minutes for a meal period without engaging in work activities. *Pellino*, 164 Wn. App. at 690.

Remedial statutes protecting employee rights must be liberally construed. *Int'l Ass'n of Fire Fighters, Local 46 v. City of Everett*, 146 Wn.2d 29, 35, 42 P.3d 1265 (2002). In this context, a liberal construction requires that the coverage of the statute's provisions "'be liberally construed [in favor of the employee] and that its exceptions be narrowly confined.'" *Peninsula Sch. Dist. No. 401 v. Pub. Sch. Emps. of Peninsula*, 130 Wn.2d 401, 407, 924 P.2d 13 (1996) (quoting *Nucleonics Alliance, Local Union No. 1-369 v. Washington Pub. Power Supply Sys.*, 101 Wn.2d 24, 29, 677 P.2d 108 (1994))

The decision in *Pellino* strongly counsels a decision in Brown's favor here. The *Pellino* court held that armored truck drivers were unlawfully deprived of breaks under WAC 296-126-092, because they were always engaged in work duties during their routes. *Pellino*, 164 Wn. App. at 690-91. The drivers had instructions to remain on guard "at all times when they are out on their routes, including whenever they are using the bathroom, purchasing food, or eating," *Pellino*, 164 Wn. App. at 677, to "not to stop the trucks for breaks, but to 'eat on the go,'" *Pellino*, 164 Wn App. at 678, and to not use "distracting materials" or engage in any personal activities. *Pellino*, 164 Wn. App. at 694.

The majority would distinguish *Pellino* by pointing out that GSF did not issue "specific" instructions requiring Brown to carry out work duties throughout his shift. Majority at 21. *Pellino*, however, did not rest its analysis on the specificity of the instructions. Instead, it held that WAC 296-126-092 was violated because "Brink's drivers and messengers were always

21

engaged in work activities and even if the crews had the opportunity to take breaks, there was insufficient time." *Pellino*, 164 Wn. App. at 694. In reaching its conclusion that this violated WAC 296-126-092, the court drew on department administrative policy ES.C.6, section 7, which stated in pertinent part that if an employee is required to remain on duty during meal periods, "the employer must make every effort to provide employees with an uninterrupted meal period." *Washington Dep't of Labor & Industries*, Administrative Policy, ES.C.6, § 7, at 3-4 (rev. June 24, 2005); *Pellino*, 164 Wn. App. at 688. The court also relied on administrative policy ES.C.6, section 10, which defined "rest period" as a break that allows the employee to stop work duties or activities for "personal rest and relaxation." *Pellino*, 164 Wn. App. at 689.

*Pellino*, in sum, found a violation not because of the specificity of the employer's instructions, but because the employees were always engaged in work activities and even if they had the opportunity to take breaks, there was insufficient time. *Pellino*, 164 Wn. App. at 694. These, also, were the trappings of Brown's employment. Soon after he was hired, Brown's supervisors began to complain that he was not working fast enough. According to Brown's testimony, he was "a little bit slower bending and moving around" as a result of his injury. Clerk's Papers (CP) at 37, 139. Specifically, his injury made him unable to "jump in and out of the trucks and off load heavy products, often times at shoulder level, without producing pain and discomfort." CP at 288. Brown told his supervisors about the injury and asked for a mechanical lift for his truck, which he asserted would help him to work faster. Although a majority of GSF's trucks were equipped with such mechanical lifts, Brown's request was ignored. GSF's drivers were told to "just keep working and get the shift done," CP at 134, and Brown worked through his lunch and rest breaks to do so. In fact, on the night Brown injured his back on the job, his

22

night supervisor, Chuck Brewer, told him to continue working and complete the route "because [we] could not have a 'late [delivery].'" CP at 36.

These uncontroverted facts show that, as in *Pellino*, the employer may have offered required breaks as a matter of policy, but as a matter of fact denied them through its demands for work. GSF in effect gave Brown the Hobson's choice of either sacrificing required breaks or risking termination. In fact, Brown was denied even this choice, because he ultimately was fired even though he sacrificed his breaks. Washington State has a "long and proud history of being a pioneer in the protection of employee rights." *Drinkwitz v. Alliant Techsystems, Inc.*, 140 Wn.2d 291, 300, 996 P.2d 582 (2000). To tolerate employer conduct such as this is to forfeit that tradition. Under the uncontroverted facts, GSF denied Brown his rest and meal breaks in violation of WAC 296-126-092. Accordingly, I would reverse the trial court's grant of summary judgment denying his claim of failure to provide rest or meal breaks, and I would reverse the trial court's denial of Brown's own summary judgment motion on the same claim.

BJORGEN, J.

23

MELNICK, J. (Concur in part, Dissent in part) — I agree with the lead opinion's reasoning and decision, except on the issue of a duty to accommodate Anthony Brown based on his surgically corrected 1980 injury. While the lead opinion correctly states the applicable law, I cannot agree that the record before us gives rise to a genuine issue of material fact on the duty to accommodate. Rather, the undisputed facts show that Brown did not have a qualifying injury that had a substantial limiting effect on his ability to perform his job as a delivery truck driver. Therefore, Golden State Foods Corporation (GSF) did not owe Brown a duty to accommodate, and I would affirm the trial court's granting of summary judgment to GSF on this issue. I respectfully dissent.

The record demonstrates the following undisputed facts. Approximately 30 years ago, Brown had successful surgery to correct a back injury. He has had two support rods in his spine since the surgery. Even with these rods, Brown has "always been able to keep up with the various jobs [he has] had." Clerk's Papers (CP) at 287.

In 2009, Brown applied to be a delivery truck driver with GSF. He passed all of the physical tests and medical examinations required for this employment, including a weight-lifting test. The examining physician medically cleared Brown to work as a driver without any modifications to his job duties. During his road test, Brown told a supervisor that he "had no medical restrictions, as such, and that [he] did not think this would be a problem but that [he] may not be as fast as other drivers." CP at 36. Brown was hired as a probationary employee for 90 days.

Brown was not as fast as other drivers. Shortly after being hired, but within his 90-day probationary period, Brown's slow work concerned his supervisors. Brown admitted he was "a little bit slower bending and moving around" as a result of his prior back injury and surgery, and

he was unable to "jump in and out of the trucks and off load heavy products, often times at shoulder level, without producing pain and discomfort." CP at 37, 139, 288. But there is no evidence in the record to demonstrate any change to Brown's physical well-being from the time he was hired until he suffered an on-the-job injury.

About two weeks prior to his termination, Brown asked his supervisors for a mechanical lift for his truck. He said this lift would help him work faster and "prevent [his] back from acting up."[5] CP at 36. Brown also asked to be transferred to a warehouse job. Neither of his requests was granted.

Shortly thereafter, Brown injured his back while transferring crates of milk from the bed of the truck to the dolly. He has not returned to work.[6]

Both parties moved for summary judgment on the accommodation claim; each argued that there were no issues of material fact in dispute and that the accommodation claim could be resolved as a matter of law. The trial court denied Brown's partial summary judgment motion, granted GSF's summary judgment motion, and dismissed all of Brown's claims.

NO ISSUE OF FACT ON ACCOMMODATION

Brown argues that GSF failed to accommodate his prior back injury by failing to provide him with a mechanical lift or by not giving him a warehouse job. GSF argues that it owed Brown no duty to accommodate because Brown did not have a qualifying disability until his on-the-job

---

[5] Even this statement by Brown demonstrates he did not have either a disability or an impairment. It is not the case that Brown's back was *presently* acting up when he made the statement—rather, he speculated that his back would act up in the future.

[6] I agree with the lead opinion's analysis of Brown's on-the-job injury.

injury, at which point Brown became unable to work even with a reasonable accommodation. I agree with GSF and would affirm the trial court.

As a threshold matter, we must determine whether Brown had a disability that would entitle him to a reasonable accommodation. I do not believe he did. This term is defined by statute:

> (a) "Disability" means the presence of a sensory, mental, or physical impairment that:
>> (i) Is medically cognizable or diagnosable; or
>> (ii) Exists as a record or history; or
>> (iii) Is perceived to exist whether or not it exists in fact.
>
> (b) A disability exists whether it is temporary or permanent, common or uncommon, mitigated or unmitigated, or whether or not it limits the ability to work generally or work at a particular job or whether or not it limits any other activity within the scope of this chapter.

RCW 49.60.040(7). None of these three conditions is met.

First, no record or history shows that Brown had an impairment[7] during the time prior to his on-the-job injury. To the contrary, he had "always been able to keep up with the various jobs [he has] had." CP at 287. Second, the undisputed facts fail to show that Brown had a physical impairment that was medically cognizable or diagnosable. Brown passed all of the physical tests and medical examinations required for this employment. The examining physician medically cleared Brown to work as a driver without any modifications to his job duties. Third, Brown himself did not perceive that he had an impairment. Brown told a supervisor during his road test that he "had no medical restrictions, as such, and that [he] did not think this would be a problem but that [he] may not be as fast as other drivers." CP at 36. He also stated that he wanted the

---

[7] The term "impairment" is defined in RCW 49.60.040(7)(c).

26

mechanical lift for his truck to help him work faster and "prevent [his] back from acting up," not to address current problems with his back. CP at 36. For me, these admissions end the inquiry.

To survive summary judgment, Brown was not permitted to "rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." CR 56(e). In my view, he has not set forth specific facts concerning his alleged impairment, and I would affirm the trial court in granting summary judgment dismissal of Brown's accommodation claim. However, because the lead opinion has gone beyond this point, I find it necessary to continue the analysis.

Even if Brown has a disability, as the lead opinion concludes, the employer has no duty to accommodate unless:

> [A]n impairment [is] known or shown through an interactive process to exist in fact and:
>
> (i) The impairment must have a substantially limiting effect upon the individual's ability to perform his or her job, the individual's ability to apply or be considered for a job, or the individual's access to equal benefits, privileges, or terms or conditions of employment; or
>
> (ii) The employee must have put the employer on notice of the existence of an impairment, and medical documentation must establish a reasonable likelihood that engaging in job functions without an accommodation would aggravate the impairment to the extent that it would create a substantially limiting effect.

RCW 49.60.040(7)(d). Importantly, "a limitation is not substantial if it has only a trivial effect." RCW 49.60.040(7)(e). The lead opinion ignores this language and concludes that there is a genuine issue of material fact as to whether Brown's alleged impairment substantially limited his ability to perform his job. Again, I disagree.

As a threshold matter, Brown was not entitled to an accommodation because the impairment was never "known or shown through an interactive process to exist in fact." RCW 49.60.040(7)(d). It is the employee's burden to start the interactive process by giving the employer notice of the asserted disability. *Goodman v. Boeing Co.*, 127 Wn.2d 401, 408-09, 899 P.2d 1265 (1995). It is not enough for the employee to state that he or she is feeling badly in general—the employee's notice must reference the specific disability asserted. *Carr v. Boeing Co.*, 2014 WL 3056807, at *5 (W.D. Wash. 2014) (court order). "An employee cannot alert the employer to a disability months or years earlier, make a request without referencing the disability, and then argue that the employer had a duty to engage in the interactive process due to the previous notice." *Carr*, 2014 WL 3056807, at *5. Even if Brown's prior injury constituted a disability, his request for an accommodation did not specifically reference the injury. Brown complained of back pain without specifying that it was related to his old injury or the rods in his spine. Without these specifics, GSF had no duty to second guess the expert medical determination that Brown was able to work as a delivery driver without accommodation.

Nothing in the record indicates that an interactive process of the sort contemplated by RCW 49.60.040(7)(d) ever occurred. That should end the analysis.

Even if GSF could be charged with having knowledge of Brown's impairment, Brown has not shown that his impairment qualifies for accommodation under either prong of RCW 49.60.040(7)(d). In order to trigger an employer's duty to accommodate, (i) the impairment must have a substantially limiting effect on the employee's ability to perform his job, or (ii) medical documentation must establish a reasonable likelihood that engaging in job functions without an

28

accommodation would aggravate the impairment to the extent that it would create a substantially limiting effect. RCW 49.60.040(7)(d).

Starting with the second prong first, Brown produced no medical documentation establishing that engaging in job functions without an accommodation would be reasonably likely to aggravate his surgically repaired 1980 back injury, an injury which Brown's physical examination and his own words established would not prevent him from working. RCW 49.60.040(7)(d)(ii). Therefore, the second prong is not applicable. *See* RCW 49.60.040(7)(d)(ii).

In the absence of medical documentation, Brown must show that his impairment meets the first prong, i.e., that it had a "substantially limiting effect." RCW 49.60.040(7)(d)(i). Brown fails to do so. His own declaration indicates that he was "a little bit slower bending and moving around." CP at 37. Without more, this bare assertion does not measure up to Brown's burden to "set forth specific facts showing that there is a genuine issue for trial." CR 56(e). It is true that Brown was slow enough that his supervisors were dissatisfied with his work. But many of GSF's drivers, not only Brown, would finish their routes late. There were occasions when Brown would complete his routes in less time than other drivers. Brown fails to show that his job performance was substantially limited, let alone that his injury was the *cause* of any limitation. Brown fails to create a genuine issue of material fact as to whether his prior injury had a substantially limiting effect.

No. 45097-6-II

Because he fails to meet either prong of RCW 49.60.040(7)(d), Brown cannot show that his prior back injury entitled him to a reasonable accommodation. The trial court did not err by granting summary judgment to GSF or by denying summary judgment to Brown. Accordingly, I respectfully dissent.

MELNICK, J.