[No. 30269-5-III.   Division Three.   October 23, 2012.]

ALBERT DAVIS ET AL., *Appellants*, v. FRED'S APPLIANCE, INC., *Respondent*.

*Gregory G. Staeheli* (of *Law Office of Gregory Staeheli*), for appellants.

*William M. Symmes* (of *Witherspoon Kelley PS*), for respondents.

¶1  SWEENEY, J. — This appeal follows the summary dismissal of a suit for employment discrimination. The suit is

*Wilmot v. Kaiser Aluminum & Chem. Corp.*, 118 Wn.2d 46, 68-69, 821 P.2d 18 (1991).

¶42 We have already concluded that discrimination based on perceived sexual orientation discrimination is not protected by the WLAD. We need not then address the question of retaliation for protected activity since any activity would not be protected.

DEFAMATION

¶43 A threshold requirement of defamation is that the alleged defamatory statement be a statement of fact and not just opinion. *Robel v. Roundup Corp.*, 148 Wn.2d 35, 55, 59 P.3d 611 (2002). But the line between fact and opinion is sometimes blurry. So there is a three-part test to determine whether a statement is actionable. *Dunlap v. Wayne*, 105 Wn.2d 529, 539, 716 P.2d 842 (1986). We must consider "(1) the medium and context in which the statement was published, (2) the audience to whom it was published, and (3) whether the statement implies undisclosed facts." *Id.* Whether a statement is one of fact or opinion is a question of law unless the statement could only be characterized as either fact or opinion. *Id.* at 540 n.2.

¶44 Opinion is more likely in certain contexts. The workplace can be a place that invites "exaggeration and personal opinion." *Robel*, 148 Wn.2d at 56-57; *Dunlap*, 105 Wn.2d at 539. The statements here were comments made by one employee to another in the workplace. Mr. Ellis made his comments as Mr. Davis entered the room. The comments were apparently intended to be comical or perjorative, or both.

¶45 The second factor addresses the listener expectations and what the listener would reasonably perceive about the statement. *Dunlap*, 105 Wn.2d at 539. Co-workers and customers heard the statements. Mr. Davis had been delivering appliances to Fred's Appliance stores for nearly a year at the time Mr. Ellis made his comments. His co-workers were likely familiar enough with Mr. Davis to

know that he was not gay. Customers could not have known whether Mr. Davis was gay but would not have gathered that Mr. Davis was gay from Mr. Ellis's comments. In the first incident, customers looked uncomfortable after Mr. Ellis made his comments. Mr. Davis presumes that they were uncomfortable because they thought that Mr. Davis was gay. But in context it is more likely that they looked uncomfortable because they recognized that calling a co-worker "Big Gay Al" is inappropriate. In the second incident, Mr. Ellis explained that "Big Gay Al" is from a television program, *South Park*. Overhearing customers would have understood the statement as a joke or popular cultural reference and not necessarily a reflection on Mr. Davis's sexual orientation. In the third incident, Mr. Ellis again said, "Hey, Big Gay Al," and Mr. Davis replied, "Hey, I thought I asked you to stop?" In that situation, a customer overhearing it would have perceived that Mr. Davis was the object of some teasing and not necessarily gay.

¶46 The third and most crucial factor addresses whether a listener unknown to the plaintiff can judge the truthfulness of the statement. *Id.* at 530-40. While some customers could have taken the statement "Big Gay Al" as a truthful statement, the first and second factor suggest that the statements amounted to unwanted co-worker joking or teasing. *See Robel*, 148 Wn.2d at 57 (citing *Ollman v. Evans*, 242 U.S. App. D.C. 301, 750 F.2d 970, 985 (1984)). Considering the totality of the circumstances, the court correctly concluded that Fred's Appliance was entitled to judgment as a matter of law on Mr. Davis's defamation claim.

¶47 Mr. Davis also failed to make out a prima facie case of defamation. Once the plaintiff establishes that a statement of fact was made, he must prove four elements: falsity, an unprivileged communication, fault, and damages. *Eubanks v. N. Cascades Broad.*, 115 Wn. App. 113, 119, 61 P.3d 368 (2003). "The prima facie case must consist of specific, material facts, rather than conclusory statements, that would allow a jury to find that each element of

defamation exists." *LaMon v. Butler*, 112 Wn.2d 193, 197, 770 P.2d 1027 (1989).

¶48 Mr. Davis failed to make a sufficient showing of damages. Mr. Davis seeks special damages, but he failed to raise any specific, material facts to support this element of defamation. *See id.* He also seeks general damages for "mental distress, anguish, humiliation, and loss of enjoyment of life." CP at 6. General damages are recoverable only from defamation per se. *See Haueter v. Cowles Publ'g Co.*, 61 Wn. App. 572, 578, 811 P.2d 231 (1991). However, imputation of homosexuality is not defamatory per se; defamation per se generally requires imputation of a crime or communicable disease. *Boehm v. Am. Bankers Ins. Grp., Inc.*, 557 So. 2d 91, 94-95 (Fla. Dist. Ct. App. 1990); *Wilson v. Harvey*, 164 Ohio App. 3d 278, 285-86, 2005-Ohio-5722, 842 N.E.2d 83.

¶49 We affirm the summary dismissal of the suit.

BROWN, J., concurs.

¶50 SIDDOWAY, A.C.J. (dissenting) — I agree with the majority that Albert Davis has not presented facts that would support a claim under the Washington Law Against Discrimination, chapter 49.60 RCW. I part ways with the majority when it comes to the claim for defamation, however.

¶51 Fred's Appliance has not presented evidence that the meaning that listeners attached to "Big Gay Al" is sufficiently free from reasonable doubt as to support denying Mr. Davis a trial. While I agree that Steve Ellis's name-calling was not defamatory per se, Fred's Appliance did not effectively raise the issue of special damages by its motion below. Even assuming it did, Mr. Davis has alleged special damages in the form of lost employment and supported a causal connection between the name-calling, his reaction to the name-calling, and his discharge by Fred's Appliance.

*The Record Does Not Support Dismissal on the Basis of Lack of Damages*

¶52 I agree with the majority that Mr. Ellis's calling Mr. Davis "Big Gay Al" is not defamatory per se, in the sense of being actionable without proof of special damages because it (1) exposes a living person to hatred, contempt, ridicule, or obloquy, or deprives him of the benefit of public confidence or social intercourse or (2) injures him in his business, trade, profession, or office. *Caruso v. Local Union No. 690 of Int'l Bhd. of Teamsters*, 100 Wn.2d 343, 353, 670 P.2d 240 (1983); *cf.* RESTATEMENT (SECOND) OF TORTS §§ 570-574, 614 (1977) (identifying imputations of a criminal offense; a loathsome disease; a matter incompatible with a plaintiff's business, trade, profession, or office; or serious sexual misconduct as the types of slander that will subject a publisher to liability without proof of special harm).[2]

¶53 Statements falling within the per se categories are thought to be so obviously and materially harmful to a plaintiff that damage can be presumed. *See Arnold v. Nat'l Union of Marine Cooks & Stewards*, 44 Wn.2d 183, 187, 265 P.2d 1051 (1954) (jury may assess substantial damages in such cases " 'upon the assumption that the plaintiff's reputation has been injured and his feelings wounded' " (quoting CHARLES T. MCCORMICK, HANDBOOK ON THE LAW OF DAMAGES § 116, at 423 (1935))). By comparison, statements that are not slanderous per se constitute defamation if they " 'tend[ ] so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him.' " *Rickert v. Pub. Disclosure Comm'n*, 161 Wn.2d 843, 851 n.8, 168 P.3d 826 (2007) (quoting RESTATEMENT § 559 (1977)). Today, and particularly where the audience is or includes younger

---

[2] As noted in *Caruso*, Washington decisions also sometimes speak of communications being defamation, libel, or slander "per se" to mean that a communication is defamatory on its face. 100 Wn.2d at 353 (citing *Amsbury v. Cowles Publ'g Co.*, 76 Wn.2d 733, 737, 458 P.2d 882 (1969)). That is not the meaning at issue here.

listeners, it is unrealistic to say that an imputation of homosexuality is so obviously and materially harmful to a plaintiff that damage may be presumed. *See, e.g.*, Peter Baker, *Same-Sex Marriage Support Shows Pace of Social Change Accelerating*, N.Y. Times, May 11, 2012, at A20.

¶54 Mr. Davis can be excused from devoting a portion of his summary judgment response to special damages, however, because the existence of a genuine issue of fact as to damages was not effectively raised by Fred's Appliance. The company's motion for summary judgment relied on the absence of a genuine issue of fact as to damages in passing, at best. It did not mention an absence of evidence to support the damages element in the motion itself or in the introduction and summary of its argument. In the body of its brief, its discussion of damages consisted of four conclusory sentences:

> Plaintiff's claim of defamation fails as a matter of law because there are no facts to establish a *prima facie* case. A plaintiff bringing a defamation action must prove "four essential elements: falsity, an unprivileged communication, fault, and damages." *Mark v. Seattle Times*, 96 Wn.2d 473, 486, 635 P.2d 1081 (1981).

Clerk's Papers at 101. After elaborating on the absence of facts supporting vicarious liability or that Mr. Ellis was communicating a statement of fact, it concluded:

> Finally, without causation and damages, there is [no] available remedy. Plaintiffs are unable to establish any liability of Fred's Appliance and cannot satisfy the elements of a defamation claim.

*Id.* While it further briefed the alleged absence of evidence supporting vicarious liability or an actionable statement of fact, it said nothing else about damages. In responding to the company's motion, Mr. Davis admittedly did not directly address damages at all.

¶55 In moving for summary judgment, it is the moving party that bears the initial burden of showing the absence

of an issue of material fact. *Young v. Key Pharm., Inc.*, 112 Wn.2d 216, 225, 770 P.2d 182 (1989). Here, Mr. Davis's complaint alleged that he had suffered damages and explicitly alleged that he had suffered special damages in the form of lost wages and benefits. To meet its initial burden as the moving party, Fred's Appliance was required, at a minimum, to present some evidence that Mr. Davis had not suffered the damages he claimed to have suffered or some argument why they were not recoverable. It offered neither.

¶56 The *Restatement (Second) of Torts* defines the "special harm" required to recover for slander that is not actionable per se as "the loss of something having economic or pecuniary value," explaining that the requirement can be traced back to the conflicting jurisdictions of the royal and the ecclesiastical courts, in which the former acquired jurisdiction over some kinds of defamation only because they would be found to have resulted in " 'temporal' " rather than " 'spiritual' " damage. RESTATEMENT § 575 cmt. b (1977). The *Restatement* suggests that special harm includes any pecuniary or economic loss, explicitly identifying discharge from employment as a type of special harm. *Id.*

¶57 Of course, the defamation must be the proximate cause of the special damages. *Schmalenberg v. Tacoma News, Inc.*, 87 Wn. App. 579, 599 & n.56, 943 P.2d 350 (1997). In the usual case where discharge from employment is the special harm suffered, it is likely because the employer believes or is concerned that others will believe defamatory matters about its employee. The *Restatement* suggests, however, that defamation is the legal cause of special harm if it is a substantial factor in bringing about the harms and "there is no rule of law relieving the publisher from liability because of the manner in which the publication has resulted in the harm." RESTATEMENT § 622A(b) (1977). The rules that can relieve the defamer from liability are, in general, the same as those that determine the similar question of the liability of a negligent actor for physical harm. *Id.* § 622A cmt. c. They include the rule that acts taken

by the person who is harmed as a normal response to the situation created by the actor's tortious conduct are not a superseding cause of harm that the actor's conduct has been a substantial factor in bringing about. RESTATEMENT (SECOND) OF TORTS § 443 & cmt. a (1965).

¶58 Such principles were applied in *Stevens v. Haering's Grocetorium*, 125 Wash. 404, 216 P. 870 (1923), where the court affirmed the trial court's refusal to instruct a jury, as requested by the defamer, that the defamer could not be held liable for damages resulting from the plaintiff's own statements. The court held that the defamer was not entitled to the instruction where the plaintiff, in response to defamatory charges, "as a natural and to be anticipated result, became hysterical and said and did things which were the pure product of appellants' action rather than the result of her own volition." *Id.* at 405.

¶59 In my view, Fred's Appliance is not entitled to summary judgment on the basis of a failure of Mr. Davis to present evidence of special damages because it failed to meet its initial burden as the moving party. And if we review the evidence presented by both parties on other matters raised by the company's motion, it includes evidence from which a jury could find that the company's discharge of Mr. Davis—a special harm—was the result of acts on his part that were the foreseeable response to Mr. Ellis's repeated name-calling.

*Absent Signals that a Speaker Is Not Communicating Fact, Referring To an Individual as Gay Is Capable of Conveying that He Is Gay*

¶60 In determining whether a given communication is defamatory, three questions may arise: first, whether the communication was reasonably capable of conveying the particular meaning ascribed to it by the plaintiff; second, whether that meaning is defamatory; and third, whether the meaning in question was in fact conveyed to and

understood by the recipient of the communication. RESTATE-MENT § 614 & cmt. b (1977). The court determines the first two questions, and the jury determines the third. Fred's Appliance argues that it was entitled to summary judgment on either of the first two issues.

¶61 The company argues that Mr. Ellis's addressing Mr. Davis as "Big Gay Al" was not reasonably capable of conveying the meaning ascribed to it by the plaintiff: that Mr. Davis was gay. While Mr. Ellis literally called Mr. Davis "Gay," he claims it was in jest. A problem with fitting "the round peg of humor into the square hole of defamation" is that it "does not fit easily into the paradigm of truth and falsity. Humor is by definition not 'serious,' thus suggesting that it operates outside the realm of anything one could verify." Laura E. Little, *Just a Joke: Defamatory Humor and Incongruity's Promise*, 21 S. CAL. INTERDISC. L.J. 95, 119 (2011). By the same token, the fact that a speaker intends an admitted mischaracterization in jest does not make it nonactionable if the plaintiff can prove the elements of defamation. See Gregory G. Sarno, Annotation, *Libel or Slander: Defamation by Statement Made in Jest*, 57 A.L.R.4TH 520 (1987 & Supp. 2012) and cases collected therein.

¶62 Beginning with *Benjamin v. Cowles Publishing Co.*, 37 Wn. App. 916, 922, 684 P.2d 739 (1984), Washington courts have determined whether communications that rely on metaphor, hyperbole, satire, sarcasm, or parody are actionable defamation by analyzing them as opinion. *Accord Dunlap v. Wayne*, 105 Wn.2d 529, 539, 716 P.2d 842 (1986) (exaggeration/hyperbole in labeling a payment a "kickback"); *Hoppe v. Hearst Corp.*, 53 Wn. App. 668, 672-73, 770 P.2d 203 (1989) (satire). In determining whether the communication is nonactionable opinion, Washington cases have considered "the totality of circumstances in which a statement was made," including, at least, the circumstances identified by the majority opinion: "(1) the medium and context in which the statement was published, (2) the

audience to whom it was published, and (3) whether the statement implies undisclosed facts." *Dunlap*, 105 Wn.2d at 539. Other Washington cases have relied on the test adopted by the United States Supreme Court to determine whether a statement may fall outside the scope of First Amendment protection: whether it is "provable as false." *Haueter v. Cowles Publ'g Co.*, 61 Wn. App. 572, 586, 811 P.2d 231 (1991) (citing *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 110 S. Ct. 2695, 111 L. Ed. 2d 1 (1990)). Whichever analysis is applied, the objective is to protect a speaker where "the kind of language used and the context in which it is used may signal readers that an author is not purporting to state or imply actual, known facts." *Milkovich*, 497 U.S. at 25 (Brennan, J., dissenting).

¶63 Contrary to Fred's Appliance's suggested analysis, Washington cases do not treat the workplace as a setting in which mischaracterization is the norm. In *Robel v. Roundup Corp.*, 148 Wn.2d 35, 59 P.3d 611 (2002) the plaintiff, who filed a claim of workplace injury and then maintained a diary recording alleged wrongdoing by others in her workplace, was called an "idiot," a "snitch," a "squealer," and a "liar" by her co-workers. In finding these epithets nonactionable in context, our Supreme Court did not rely on a conclusion that workplaces generally invite exaggeration or mischaracterization, but instead—given the history of Ms. Robel's claim and the skepticism and resentment with which it was met by her co-workers— concluded that "[t]hose engaging in the name-calling were . . . individuals who were potentially interested in discrediting her complaints . . . or who were personally interested in ostracizing Robel in the workplace." *Id*. at 56. Elsewhere, it held that the audience to the communications was prepared for mischaracterization and exaggeration not because of the workplace setting alone, but because "[t]hey would have been aware of the animosity between Robel and other co-workers." *Id*. at 57. In other words, it was the listeners' awareness of the ongoing dispute between Robel and her

co-workers that signaled to listeners that the speakers were "antagonistic or resentful co-worker[s]." *Id.* Neither *Robel* nor the other Washington cases cited by Fred's Appliance support the proposition that reasonable listeners automatically discount statements made by one employee about another.

¶64 Turning to any other signals that Mr. Ellis was not stating known facts, employees would know and customers would presume that "Big Gay Al" was not Mr. Davis's real name. But review of the declarations and deposition testimony submitted in support of the company's motion for summary judgment reveals nothing about Mr. Ellis's statements, the setting, or the audience that would have signaled that his nickname for Mr. Davis was intended to be ironic rather than descriptive, and the rest of the nickname—"Big" and "Al"—was descriptive. There is nothing in the record establishing that anyone in the audience knew that Mr. Davis was heterosexual.

¶65 Fred's Appliance likens this case to *Hoppe*, in which a satirical newspaper column about a fictional "Hurley Herpes" that pilloried a former King County assessor, Harley Hoppe, was found nonactionable as a matter of law. But there, the court relied on multiple signals that use of the name "Hurley Herpes" did not communicate an actual fact about Hoppe's medical condition. The columnist was "known for his sharp pen and humorous, fanciful columns." 53 Wn. App. at 670. The column was written as a first-person narrative by "Philip Marlowe" and parodied Raymond Chandler's detective novels. The audience to whom the column was directed knew that the author "frequently used alliterative nicknames to refer to public figures." *Id.* at 673. Here, the company relies on its assertion that "Big Gay Al" is the name of a "popular cartoon character," Br. of Resp't at 1, although without presenting evidence that members of Mr. Ellis's audience were familiar with the character or that the *South Park* program is so widely viewed as to make familiarity with "Big Gay Al" commonplace. Even so, refer-

ring to Mr. Davis by the name "Big Gay Al" does not, on its face, reveal that "Big" and "Al" have truth content but "Gay" does not.

¶66 The answer to the first question, then, is that Mr. Ellis's calling Mr. Davis "Big Gay Al" was sufficiently capable of conveying that Mr. Davis was gay that a jury, not a gatekeeping court, should decide its perceived meaning. *See Amsbury v. Cowles Publ'g Co.*, 76 Wn.2d 733, 740, 458 P.2d 882 (1969) (in determining whether a communication was capable of conveying the meaning ascribed by the plaintiff, "in all but extreme cases the jury should determine the question"); RESTATEMENT § 563 cmt. e (1977) (unless the meaning attached to the communication by the persons to whom it was published is free from reasonable doubt, it is for the jury to determine the meaning and construction of the alleged defamatory language).

*An Attribution of Homosexuality Could Prejudice Mr. Davis in the Estimation of a Sufficient Segment of the Population To Entitle Him to Jury Trial*

¶67 The next issue argued by Fred's Appliance on appeal is whether asserting that Mr. Davis is gay is defamatory at all. While the two judges in the majority and I agree that such a communication is not defamatory per se, a plaintiff alleging simple defamation need not show that a communication lowers him in the estimation of the entire community. The *Restatement* provides that "[i]t is enough that the communication would tend to prejudice him in the eyes of a substantial and respectable minority" of those who hear the challenged speech. RESTATEMENT § 559 cmt. e (1977); Lyrissa Barnett Lidsky, *Defamation, Reputation and the Myth of Community*, 71 WASH. L. REV. 1, 17 n.87 (1996) (characterizing the *Restatement* test as the prevailing American rule). Prosser and Keeton have criticized applying a normative standard for defining a sufficient minority view, "since the court cannot be called upon to make a definitive pronounce-

ment upon whether the views of different segments of the community are right or wrong, sound, or morally justifiable." W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 111, at 777 (5th ed. 1984) (criticizing a requirement that the plaintiff be lowered in the esteem of " 'right-thinking people' "). They suggest

> [t]he line is drawn . . . when the group who will be unfavorably impressed becomes so small as to be negligible, or one whose standards are so clearly anti-social that the court may not properly consider them.

*Id.* at 778 (footnote omitted).

¶68 Even contemporary cases that reject imputations of homosexuality as defamatory per se recognize that the imputation presents enough potential for harm to reputation to be actionable with proof of special damages. *See, e.g., Stern v. Cosby*, 645 F. Supp. 2d 258, 275 (S.D.N.Y. 2009) (noting that defendants' statements "are not defamatory per se merely because they impute homosexuality to Stern. They are, however, nonetheless susceptible to a defamatory meaning"); *Yonaty v. Mincolla*, 97 A.D.3d 141, 945 N.Y.S.2d 774, 779 (2012) (holding that imputation of homosexuality was not defamation per se "and, thus, plaintiff's failure to allege special damages requires that the remaining cause of action for slander be dismissed"); *Donovan v. Fiumara*, 114 N.C. App. 524, 442 S.E.2d 572, 575 (1994) (noting the plaintiff did not allege slander per quod).

¶69 Such claims must be allowed to go to juries, so that redress is available in cases of provable special harm. As societal norms evolve, false imputations of homosexuality will present a diminishing risk of harm and slander cases arising from them can be expected to produce smaller awards, or perhaps no award, of general damages. But as observed over a century ago by Justice Holmes in *Peck v. Tribune Co.*, 214 U.S. 185, 189-90, 29 S. Ct. 554, 53 L. Ed. 960 (1909)—a libel action based on the false depiction of Elizabeth Peck as a whisky-drinking, whisky-advocating

nurse that was dismissed by the court of appeals, there being "no general consensus of opinion that to drink whisky is wrong"—"It may be that the action for libel is of little use but, while it is maintained, it should be governed by the general principles of tort."

¶70 It oversteps our role to accept Fred's Appliance's invitation and hold, as a matter of law, that an imputation of homosexuality is no longer defamatory.

### The Company Has Not Demonstrated that Respondeat Superior Liability Is Not an Issue for the Jury

¶71 Finally, Fred's Appliance argues that even if Mr. Davis could assert a defamation claim individually against Mr. Ellis, it can have no liability as a matter of law for Mr. Ellis's statements because they were made outside the scope of his employment. It relies on Washington cases establishing that " '[w]hen an employee's intentionally tortious or criminal acts are not in furtherance of the employer's business, the employer is not liable as a matter of law, even if the employment situation provided the opportunity or means for the employee's acts.' " Br. of Resp't at 41 (alteration in original) (quoting *Snyder v. Med. Serv. Corp. of E. Wash.*, 145 Wn.2d 233, 242, 35 P.3d 1158 (2001)). But Mr. Davis has not alleged intentional wrongdoing. To establish the requisite element of fault, only proof of negligence is required of a private plaintiff asserting a defamation claim. *Valdez-Zontek v. Eastmont Sch. Dist.*, 154 Wn. App. 147, 157, 225 P.3d 339 (2010) (citing *Bender v. City of Seattle*, 99 Wn.2d 582, 599, 664 P.2d 492 (1983)).

¶72 Even where an employee's act was merely negligent, the doctrine of respondeat superior still requires that the act fall within the scope of employment. But whether acts are committed within the scope of employment is ordinarily a question for the jury. *Gilliam v. Dep't of Soc. & Health Servs.*, 89 Wn. App. 569, 950 P.2d 20 (1998). The record establishes that Mr. Ellis's responsibilities and authority

included interacting with Mr. Davis and giving him direction when Mr. Davis made deliveries to the store where Mr. Ellis served as sales manager. Clearly, addressing Mr. Davis was in furtherance of Fred's Appliance's business and in the course and scope of employment. While the company argues that addressing Mr. Davis in a teasing manner was a violation of company policy, the fact that an employee was violating company policy does not prevent a finding that the employee was acting within the course and scope of employment. " '[A]n act, although forbidden, or done in a forbidden manner, may be within the scope of employment.' " *Dickinson v. Edwards*, 105 Wn.2d 457, 470, 716 P.2d 814 (1986) (quoting RESTATEMENT (SECOND) OF AGENCY § 230 (1958)).

¶73 Because I would reverse the award of summary judgment dismissing Mr. Davis's claim of slander, I respectfully dissent.