

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| JIMMIE R. GOODE, | ) | No. 73546-2-I |
| | ) | |
| Appellant, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | |
| TUKWILA SCHOOL DISTRICT NO. 406, | ) | UNPUBLISHED |
| | ) | |
| | ) | FILED: July 5, 2016 |
| Respondent. | ) | |
| | ) | |

Cox, J. — Jimmie Goode appeals the order granting summary judgment of dismissal to the Tukwila School District. This action is for claimed violations of the Washington Law Against Discrimination (WLAD) and for negligent and intentional infliction of emotional distress. We affirm the trial court's grant of summary judgment on the negligent and intentional infliction of emotional distress claims. There are no genuine issues of material fact respecting these claims. Because genuine disputes of material fact exist as to both of the WLAD claims, we reverse the remainder of the order granting summary judgment. We also deny both parties' requests for attorney fees on appeal.

In 2007, Goode began working for the Tukwila School District as a physical education teacher and coach at Foster High School. Ethelda Burke was then the district superintendent.

Goode, an African American, claims that Burke made numerous racially derogatory remarks about African Americans to employees of the District. Among these remarks, she allegedly referred to African American employees as slaves. At a staff meeting, she told one employee to "'giddy up, black man.'" She also asked a group of African American employees "'Why are all you blacks sitting together?'" She also allegedly stated that hiring blacks made the District look "too ghetto."

Goode further claims that he was subjected to adverse employment actions due to his race. Among the adverse actions that he claims is an alleged failure to afford him a name clearing hearing, unfavorable work assignments, and exclusion from decision making processes.

He commenced this action against the District on April 10, 2014. In his complaint, he claims violations of WLAD as well as negligent and intentional infliction of emotional distress.[1]

The District moved for summary judgment on all claims. The trial court granted the motion in its entirety.

Goode appeals.

---

[1] Clerk's Papers at 7.

## WASHINGTON LAW AGAINST DISCRIMINATION

Goode argues that the trial court erred by dismissing his WLAD claims on summary judgment. We agree.

Summary judgment is proper "only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."[2] There is a genuine issue of material fact if reasonable minds could differ on the facts controlling the litigation outcome.[3] We consider "the evidence and all reasonable inferences from [such] evidence in the light most favorable to the nonmoving party."[4]

We review de novo a trial court's grant of summary judgment.[5]

In WLAD cases, granting summary judgment to an employer is seldom appropriate due to the difficulty of proving a discriminatory motivation.[6]

*Hostile Work Environment*

Goode argues that the trial court erred by dismissing his hostile work environment claim. We agree.

---

[2] Scrivener v. Clark Coll., 181 Wn.2d 439, 444, 334 P.3d 541 (2014); accord CR 56(c).

[3] Knight v. Dep't of Labor & Indus., 181 Wn. App. 788, 795, 321 P.3d 1275 (quoting Ranger Ins. Co. v. Pierce County, 164 Wn.2d 545, 552, 192 P.3d 886 (2008)), review denied, 339 P.3d 635 (2014).

[4] Keck v. Collins, 184 Wn.2d 358, 370, 357 P.3d 1080 (2015).

[5] Id.

[6] Scrivener, 181 Wn.2d at 445.

Hostile work environment claims based on discrimination are brought under RCW 49.60.[7] Because RCW 49.60 substantially parallels Title VII, federal discrimination cases are persuasive.[8]

RCW 49.60.180(3) provides that an employer may not discriminate against any person due to the person's race or color. To establish a hostile work environment claim, a plaintiff must show that "'(1) the harassment was unwelcome, (2) the harassment was because [plaintiff was a member of a protected class], (3) the harassment affected the terms and conditions of employment, and (4) the harassment is imputable to the employer.'"[9]

Washington courts permit hostile work environment claims "based on acts that individually may not be actionable but together constitute part of a unified whole comprising a hostile work environment."[10] This is because these claims "'are different in kind from discrete acts' and '[t]heir very nature involves repeated conduct.'"[11] Thus, determining whether a work environment is hostile involves a flexible analysis. For example, an employee may satisfy an element of a hostile work environment claim if, considering the totality of the circumstances, the

---

[7] Estevez v. Faculty Club of Univ. of Wash., 129 Wn. App. 774, 790, 120 P.3d 579 (2005).

[8] Antonius v. King County, 153 Wn.2d 256, 266, 103 P.3d 729 (2004).

[9] Loeffelholz v. Univ. of Wash., 175 Wn.2d 264, 275, 285 P.3d 854 (2012) (alteration in original) (quoting Antonius, 153 Wn.2d at 261).

[10] Antonius, 153 Wn.2d at 268.

[11] Id. at 264 (alteration in original) (quoting Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 115, 122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002)).

4

harassment is sufficiently pervasive so as to alter the employee's employment conditions and create an abusive working environment.[12]

Here, there is a threshold issue to address regarding the evidence that was before the trial court. In its summary judgment order, the trial court characterized as hearsay what it called "highly offensive remarks . . . by Superintendent Ethelda Burke about African Americans . . . ."[13] Although the court did not expressly strike this evidence as hearsay, it did not discuss in any detail how these comments applied to the WLAD claims. Because these alleged comments are not hearsay and must be evaluated in light of the hostile work environment claim, we take this opportunity to explain why they are not hearsay.

Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."[14] "Where a statement is not offered for the truth of the contents of the conversation, but only to show that it was made, the statement is not hearsay."[15]

Here, Burke's statements are not hearsay because they are not offered to prove the truth of the matters asserted in them. Rather, they are offered to show that offensive statements were made.

---

[12] Loeffelholz, 175 Wn.2d at 275.

[13] Clerk's Papers at 2074.

[14] ER 801(c).

[15] State v. Gonzalez-Hernandez, 122 Wn. App. 53, 57, 92 P.3d 789 (2004).

For example, Burke's reference to other employees as slaves was not offered to prove that the employees were bound to involuntary servitude. Likewise, her question to a group of African American employees asking "'Why are all you blacks sitting together'" was not offered to show that the employees were actually sitting together. Accordingly, we consider this evidence in our substantive analysis.

*Imputing Harassment to Employer*

In this case, determining which harassing conduct can be imputed to the District is an important initial step to focus the analysis of Goode's hostile work environment claim. Goode argues that Burke's and the assistant principal's harassing conduct may be imputed to the District. We need only determine whether Burke's conduct may be imputed to the District for purposes of summary judgment review.

Harassment may be imputed to the employer in one of two ways. First, the harassment may be imputed if a manager participated in the harassment.[16] For summary judgment purposes, employees with authority to affect employee hours, wages, and working conditions qualify as managers.[17] "[A] manager is something more than a supervisor."[18]

---

[16] Davis v. Fred's Appliance, Inc., 171 Wn. App. 348, 362, 287 P.3d 51 (2012).

[17] Alonso v. Qwest Commc'ns Co., LLC, 178 Wn. App. 734, 752, 315 P.3d 610 (2013).

[18] Henningsen v. Worldcom, Inc., 102 Wn. App. 828, 838, 9 P.3d 948 (2000).

But within some employers, there may be "little distinction" between managers and supervisors.[19] Thus, Washington courts must look to the functions and responsibilities of the person at issue.[20] A manager's rank in a company's hierarchy must be high enough where the manager is the employer's "alter ego" to automatically impute harassment to an employer.[21]

Harassment may also be imputed to the employer if the harasser is the employee's supervisor and the employer "'authorized, knew, or should have known of the harassment and . . . failed to take reasonably prompt and adequate corrective action.'"[22] A supervisor can hire, fire, promote, or discipline an employee.[23] When disputed, a supervisor's status may often be resolved as a matter of law before trial.[24]

Here, only Burke's conduct may be automatically imputed to the District. Burke's rank in the District hierarchy is high enough that she is the District's "alter

---

[19] Davis, 171 Wn. App. at 363.

[20] Francom v. Costco Wholesale Corp., 98 Wn. App. 845, 854, 991 P.2d 1182 (2000).

[21] Davis, 171 Wn. App. at 363.

[22] Id. at 362 (alteration in original) (quoting Glasgow v. Georgia-Pac. Corp., 103 Wn.2d 401, 407, 693 P.2d 708 (1985)).

[23] Vance v. Ball State Univ., ___ U.S. ___, 133 S. Ct. 2434, 2443, 186 L. Ed. 2d 565 (2013).

[24] Id. at 2450.

ego."[25] As superintendent, Burke exercised her authority to affect Goode's wages and working conditions. Thus, her conduct is imputed to the District.

*Harassment*

The parties do not appear to dispute the first element of Goode's hostile work environment claim—that Goode received unwelcome harassment. But a discussion on what constitutes harassment is necessary to narrow the focus of this claim.

Harassment is conduct an employee finds offensive.[26] Discriminatory or derogatory comments, mockery, or insults towards the employee generally constitutes harassment.[27] Asserting subjective offense to facially innocuous comments, especially without acknowledging how the comment was discriminatory, is not sufficient to prevent summary judgment dismissal.[28]

"[I]f racial hostility pervades a workplace, a plaintiff may establish a violation of Title VII, even if such hostility was not directly targeted at the plaintiff."[29]

---

[25] Davis, 171 Wn. App. at 363.

[26] Glasgow, 103 Wn.2d at 406.

[27] See, e.g., Loeffelholz, 175 Wn.2d at 275; Antonius, 153 Wn.2d at 259; Alonso, 178 Wn. App. at 740; Davis, 171 Wn. App. at 362; Davis v. W. One Auto. Grp., 140 Wn. App. 449, 453, 457, 166 P.3d 807 (2007).

[28] See Crownover v. Dep't of Transp., 165 Wn. App. 131, 144-45, 265 P.3d 971 (2011).

[29] McGinest v. GTE Serv. Corp., 360 F.3d 1103, 1117 (9th Cir. 2004).

Here, Goode relies on discriminatory comments Burke made to other employees to establish harassment. For example, Burke referred to athletic director J.D. Hill as "J.Darky," who found this name to be offensive. Goode overheard Burke refer to Hill as "J.Dark."

After Hill informed Burke that he was expecting another child, Burke stated "'typical black man'" in response to him.

Burke also allegedly referred to African American employees as slaves. At a staff meeting, she told one employee to "'giddy up, black man'" and asked a group of African American employees "'Why are all you blacks sitting together?'" Goode was present at the staff meeting but did not hear the "giddy up" comment. He was told that Burke made the comment.

These comments constitute harassment. Specifically, Burke's statements to the African American employees are not "facially innocuous" because they were used to refer to the employees based on their skin color.[30] Although Goode did not understand the "J.Dark" name when he heard it, Goode stated that he "would have been highly upset" had he known and was "sickened" after Hill explained the name to him. Goode also stated that he was "disturbed" by the slave comment and "offended" by the "'giddy up, black man'" comment. Goode's reactions to these comments demonstrate that he found them to be offensive, which establishes the harassment requirement for his claim.

Goode also relies on numerous incidents throughout his employment to establish harassment, such as the change of the physical education department

---

[30] Crownover, 165 Wn. App. at 145.

9

head and his exclusion from decision making processes. But case authority demonstrates that these incidents do not constitute harassment for hostile work environment purposes. These incidents may support a disparate treatment claim, as discussed later in this opinion.

The District argues that Goode cannot base his claim on conduct allegedly directed at others, citing Crownover v. Department of Transportation[31] to support this argument. We disagree.

In that case, Division Three of this court stated that "The law requires some of the alleged acts directed at the particular plaintiff to occur within the statute of limitations in order for the claim to be timely filed."[32] But that case does not support the untenable proposition that a hostile work environment claim fails if discriminatory comments are not made directly to a plaintiff who is also a member of the protected class. Rather, the court merely explained why one of the plaintiffs failed to identify discriminatory conduct within the statute of limitations.[33]

The very nature of a hostile work environment claim is that the working environment is poisoned by discriminatory conduct. It makes no sense to this court that proof of such a claim requires that the discriminatory conduct must be directed at a specific individual. As previously stated, "if racial hostility pervades

---

[31] 165 Wn. App. 131, 265 P.3d 971 (2011).

[32] Id. at 143.

[33] Id.

a workplace, a plaintiff may establish a violation of Title VII, even if such hostility was not directly targeted at the plaintiff."[34]

In sum, Goode established this element of his hostile work environment claim.

*Motivating Factor for the Harassing Conduct*

To establish this element of the hostile work environment claim, an employee need only produce evidence supporting a reasonable inference that his or her protected class status was the motivating factor for the harassing conduct.[35] The employee "must prove the conduct would not have occurred had the employee been [outside of the protected class]."[36] A jury could reasonably conclude that subjecting an employee to "derogatory racial name-calling [i]s motivated by racial or ethnic reasons."[37] Additionally, derogatory comments about the class to which the employee belongs is "sufficient evidence to raise a question of fact on this element."[38]

Here, Goode produced evidence supporting a reasonable inference that race was the motivating factor for Burke's harassing conduct. Burke's comments towards African American employees were based on the employees' race or ethnicity, which constitutes derogatory racial name-calling. Although the

---

[34] McGinest, 360 F.3d at 1117.

[35] Alonso, 178 Wn. App. at 749.

[36] Crownover, 165 Wn. App. at 146.

[37] Alonso, 178 Wn. App. at 750.

[38] Campbell v. State, 129 Wn. App. 10, 19, 118 P.3d 888 (2005).

comments were not directed to Goode, some of the comments were made in his presence. Further, the comments were derogatory towards African Americans, the protected class to which Goode belongs. This is sufficient evidence to raise a genuine issue of fact for trial on this element.[39]

*Harassment Affecting Employment Conditions*

A hostile work environment occurs over time and is "'based on the cumulative effect of individual acts.'"[40] A single act of harassment is rarely sufficient to establish a claim.[41] More specifically, "Casual, isolated or trivial manifestations of a discriminatory environment do not affect the terms or conditions of employment to a sufficiently significant degree to violate the law."[42]

An employee satisfies this element if, considering the totality of the circumstances, the harassment is sufficiently pervasive so as to alter the employee's employment conditions and create an abusive working environment.[43] Courts must look at the "frequency and severity of harassing conduct, whether it was physically threatening or humiliating, or merely an offensive utterance, and whether it unreasonably interfered with the employee's

---

[39] Id. at 19-20.

[40] Loeffelholz, 175 Wn.2d at 273 (internal quotation marks omitted) (quoting Antonius, 153 Wn.2d at 264).

[41] Id. at 277.

[42] Glasgow, 103 Wn.2d at 406.

[43] Loeffelholz, 175 Wn.2d at 275.

work performance."[44] The conduct must be "objectively abusive" and subjectively perceived as abusive or offensive by the employee.[45]

Additionally, the conduct's level of severity or seriousness varies inversely with the conduct's pervasiveness or frequency.[46] For example, "'mere utterance of an . . . epithet which engenders offensive feelings in an employee[]' does not sufficiently affect the conditions of employment to implicate Title VII."[47] Use of a racial slur towards an employee "on three separate occasions does not, as a matter of law, reach the level of severity sufficient to create an issue of fact as to whether a hostile work environment existed."[48] But "'[r]epeated derogatory or humiliating statements . . . can constitute a hostile work environment.'"[49]

Further, a work environment may be considered hostile even if offensive comments are not made directly to the employee.[50] That is the case here.

---

[44] Alonso, 178 Wn. App. at 751.

[45] Clarke v. Office of the Att'y Gen., 133 Wn. App. 767, 787, 138 P.3d 144 (2006).

[46] McGinest, 360 F.3d at 1113.

[47] Harris v. Forklift Sys., Inc., 510 U.S. 17, 21, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993) (citation omitted) (quoting Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 67, 106 S. Ct. 2399, 91 L. Ed. 2d 49 (1986)).

[48] Equal Emp't Opportunity Comm'n v. Swissport Fueling, Inc., 916 F. Supp. 2d 1005, 1022 (D. Ariz. 2013).

[49] McGinest, 360 F.3d at 1115 (alteration in original) (quoting Ray v. Henderson, 217 F.3d 1234, 1245 (9th Cir. 2000)).

[50] Equal Emp't Opportunity Comm'n, 916 F. Supp. 2d at 1023.

Whether offensive comments affect employment conditions is a factual question.[51] Humiliation, emotional distress, absence from work, or "friction" with other employees is sufficient to create an "inference" that such reactions resulted from a hostile work environment.[52]

The employee need not prove that the harassment lessened his or her "'tangible productivity.'"[53] "It suffices to prove that a reasonable person subjected to the discriminatory conduct would find . . . that the harassment so altered working conditions as to 'ma[k]e it more difficult to do the job.'"[54]

Here, Burke's discriminatory conduct was sufficiently pervasive so as to create an abusive working environment. The comments are "objectively abusive" and are "subjectively perceived as abusive" by Goode.[55]

Specifically, Goode stated that Burke's comments affected and impacted his work environment and discouraged him. He also allegedly suffered emotional distress, causing him to miss work. He experienced headaches, high blood pressure, difficulty sleeping, anxiety, and depressed mood. Viewing this evidence in the light most favorable to Goode and considering the totality of the

---

[51] Alonso, 178 Wn. App. at 751.

[52] See W. One Auto. Grp., 140 Wn. App. at 457-58; see also Glasgow, 103 Wn.2d at 403; Alonso, 178 Wn. App. at 752.

[53] Harris, 510 U.S. at 25 (Ginsburg, J. concurring) (quoting Davis v. Monsanto Chem. Co., 858 F.2d 345, 349 (6th Cir. 1988)).

[54] Id. (quoting Monsanto Chem. Co., 858 F.2d at 349).

[55] Clarke, 133 Wn. App. at 787.

circumstances, a genuine dispute of material fact exists whether the harassment was sufficiently pervasive so as to alter Goode's employment conditions.

Accordingly, summary judgment was improper on his hostile work environment claim. We must reverse.

*Disparate Treatment*

Goode also argues that the trial court erred by dismissing his disparate treatment claim. We agree.

Under WLAD, disparate treatment occurs when employers treat certain employees "less favorably" than others because of race, color, or other protected status.[56]

To survive summary judgment, the employee must show that a reasonable jury could find that the employee's "protected trait was a substantial factor motivating the employer's adverse actions."[57] The plaintiff bears this burden of production and may use either direct or circumstantial evidence.[58]

*Adverse Action*

Goode argues that he suffered a variety of adverse employment actions. For the most part, we disagree.

Adverse employment actions are "tangible change[s] in employment status," such as reducing an employee's workload and pay.[59] They involve

---

[56] Alonso, 178 Wn. App. at 743.

[57] Scrivener, 181 Wn.2d at 445.

[58] Id.

[59] Alonso, 178 Wn. App. at 746; Crownover, 165 Wn. App. at 148.

changes in employment conditions that are more than inconveniences or alterations of an employee's job responsibilities.[60] A "'reassignment with significantly different responsibilities'" or a demotion constitute adverse employment actions.[61] According to the Ninth Circuit Court of Appeals, an undeserved and negative performance evaluation can constitute an adverse employment decision.[62] But there is no adverse employment action if the evaluation is subject to modification by the employer.[63]

Whether a particular action is materially adverse is case specific, using the reasonable person standard.[64] Determining whether a reasonable employee in the employee's position would view an action as adverse is a question of fact for a jury.[65]

Here, Goode relies on numerous claimed adverse employment actions. But these claims fall outside the statute of limitations and are not actionable.

Discrimination claims must be brought within three years.[66] The limitations period starts when a cause of action accrues, which is when a party

---

[60] Id.

[61] Id.; Crownover, 165 Wn. App. at 148 (quoting Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761, 118 S. Ct. 2257, 141 L. Ed. 2d 633 (1998)).

[62] Brooks v. City of San Mateo, 229 F.3d 917, 929-30 (9th Cir. 2000).

[63] Id. at 930.

[64] Boyd v. Dep't of Soc. & Health Servs., 187 Wn. App. 1, 13, 349 P.3d 864 (2015).

[65] Id. at 13-14.

[66] Antonius, 153 Wn.2d at 261-62.

16

has the right to seek relief in court.[67] Specifically, "[a] cause of 'action accrues when the plaintiff knows or should know the relevant facts . . . .'"[68]

Here, Goode filed his complaint on April 10, 2014. Thus, Goode's claims arising from incidents prior to April 10, 2011 are time barred.

Goode was the physical education department head from 2007 through 2008. Later, he was told that he would share these responsibilities by rotating with Shauna Briggs as the department head. Briggs is not African American. The responsibilities were not rotated back to Goode after Briggs obtained the responsibilities. But Goode told Briggs and another employee that he did not want the department head position after he requested the position. In any event, this record does not establish that this event occurred after the April 10, 2011 bar date. It cannot be a basis for a disparate treatment claim.

In 2008, Goode was prohibited from attending football practice or the last two games after swearing at a referee during a football game. Sometime before 2009, Goode chaperoned at a school prom and was assigned outside to monitor the back of the venue. In 2009, the District denied Goode's request for his daughter, a former Foster high school student, to use the school's pole vaulting facilities. These events are all outside the April 10, 2011 bar date, as well.

Goode also substituted for another teacher in 2010 and saw a picture of President Obama in the class room. Someone had made the picture "black face"

---

[67] Crownover, 165 Wn. App. at 141.

[68] Id. (internal quotation marks omitted) (quoting Gilbert v. Sacred Heart Med. Ctr., 127 Wn.2d 370, 381, 900 P.2d 552 (1995) (Durham, C.J., dissenting)).

and drew monkey ears. Goode reported the picture to the District, but he claims the District did not respond. Goode also claims that his compensation in 2010 did not accurately reflect his coaching experience. Again, these incidents fall outside the bar date.

Lastly, Goode claims that because he is African American, African American students with disciplinary issues were placed in his class for him to supervise. He claims that this interfered with his class instruction. But this incident does not appear to fall within the April 10, 2011 bar date. It does not create any genuine issue of material fact.

The absence of a record to show any of these incidents fell within the three-year statute of limitations is fatal. Accordingly, we decline to address them further.

The following incidents fall within the statute of limitations. But Goode fails to show how these incidents are adverse employment actions.

Goode claims that the former principal, Forrest Griek, rated Goode poorly although Griek had not observed Goode's performance. In 2012, Goode discussed this with Griek, who allegedly responded "okay my bad." The record is unclear on the date of this rating. But there is nothing in this record to show that it was final or not subject to modification.

In or after December 2012, Daryl Wright went to Goode's home while he was absent from work due to illness. Goode claims that the District wanted Wright to check that Goode was actually ill and that this was not done with other

18

teachers. How this constitutes an adverse employment action is left unexplained.

In September 2011, Goode complained about another teacher's continuous use of the bathroom near Goode's office where the teacher did not flush the toilet. Again, there is no showing how this is an adverse employment action by the District.

In 2013, Goode was not selected to participate on a committee formed to acquire a new principal. He also claims that he was a member of a disciplinary committee and was excluded from meetings. But Goode fails to explain how these incidents changed his employment conditions and status as a physical education teacher, which is required to show an adverse employment action.

Goode further argues that he worked in an unsafe weight room and that his safety concerns were ignored due to his race. Although Goode sustained an injury while assisting a student in class, he fails to explain how the allegedly unsafe weight room tangibly changed his employment conditions or status. For example, the record does not show that the weight room was safe before Goode taught there and later became unsafe when he started teaching. And Goode fails to show how the weight room condition was more than an inconvenience or altered his job responsibilities.

Lastly, Goode claims he was denied a "name clearing hearing" after Briggs alleged that Goode made an inappropriate comment to her. Goode claims that the mentor teacher consultant told Briggs to keep her distance from Goode, although he was Briggs's mentor. Goode claims that this negatively

impacted his opportunity for professional development and impacted his work environment. He also claims that this damaged his reputation. Goode also argues that "the District promptly investigated and cleared a [Caucasian] teacher" after he made a racially insensitive comment toward Goode.

But the record shows that the District responded to Goode's concern about this incident and offered to contact Briggs to inquire into the situation. The District also retained an investigator in response to Goode's request for an investigation into the matter. The record indicates that Goode declined to participate in the investigation, and, accordingly, the District did not proceed with an investigation.

On this record, there is simply no genuine issue of material fact for trial. To the extent this incident was problematic, the District has demonstrated that it responded to his report of alleged disparate treatment. His failure to participate in the proposed investigation bars pursuit of any claim based on this incident.

This brings us to another incident involving Briggs. Viewing the evidence in the light most favorable to Goode, we conclude it creates a genuine issue of material fact for trial.

Goode claims that Briggs was allowed to make department operation decisions without his "input," resulting in "major changes" for him. He also stated that this exclusion from the decision making process adversely impacted his teaching and class structure and negatively impacted his work environment.

Although the record does not clearly show that this significantly changed Goode's responsibilities as a physical education teacher, we must view the

evidence in the light most favorable to him. A reasonable person in his position would consider this to be an adverse employment action because it adversely impacted his teaching and class structure and negatively impacted his work environment. Thus, Goode satisfied this element of his disparate treatment claim.

*Protected Status as Substantial Factor Motivating Adverse Action*

Having concluded that there is a genuine issue of material fact regarding the adverse employment action regarding Briggs, the question is whether the motivation is racially based. Goode argues that discrimination motivated the District's adverse employment action. We conclude there is a genuine issue of material fact.

An employee establishes a disparate treatment claim either by offering direct evidence of an employer's discriminatory intent or by satisfying the McDonnell Douglas Corp. v. Green[69] burden-shifting test.[70]

If an employee uses direct evidence, he or she must show that the employer acted with a "discriminatory motive" and that "the discriminatory motivation was a significant or substantial factor in an employment decision."[71]

---

[69] 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).

[70] Alonso, 178 Wn. App. at 744.

[71] Id.

Direct evidence proves discriminatory animus without inference or presumption.[72] An employer's discriminatory remarks are direct evidence of discrimination.[73]

When an employer's statements do not directly concern the plaintiff, some inference is necessary to establish discrimination against the plaintiff.[74] But "when evidence establishes the employer's animus toward the class to which the plaintiff belongs, the inference to the fact of discrimination against the plaintiff is sufficiently small," and the evidence is treated as direct evidence.[75]

For example, in Dominguez-Curry v. Nevada Transportation Department, a supervisor made demeaning comments to and about women in the work place, including the plaintiff.[76] The Ninth Circuit Court of Appeals determined that the supervisor's comments were direct evidence of his "discriminatory animus," "overtly exhibit[ed] his hostility to women in the workplace," and were "probative of his discriminatory intent even if he directed them to other women in the division."[77]

---

[72] Rashdan v. Geissberger, 764 F.3d 1179, 1183 (9th Cir. 2014).

[73] Alonso, 178 Wn. App. at 744.

[74] Coghlan v. Am. Seafoods Co. LLC., 413 F.3d 1090, 1095 n.6 (9th Cir. 2005).

[75] Id.

[76] 424 F.3d 1027, 1031 (9th Cir. 2005).

[77] Id. at 1038.

Similarly, in Mullen v. Princess Anne Volunteer Fire Co., Inc., the plaintiff used depositions from other employees stating that the employer used racial slurs when describing African American employees.[78] The employer argued that the district court's exclusion of this evidence was proper because the statements were not directed toward the plaintiff.[79] The Fourth Circuit Court of Appeals concluded that the jury was entitled to consider this evidence. It specifically stated "that the value of these statements in revealing state of mind may still be significant . . ." and that the employer's argument went more toward the weight of the evidence rather than its admissibility.[80]

But there must be a connection between the discriminatory motive and the employment decision.[81] And a reasonable factfinder could conclude that discriminatory animus affected an employment decision "[w]here the person who exhibited discriminatory animus influenced or participated in the decisionmaking process."[82] Thus, courts must determine whether a reasonable jury could

---

[78] 853 F.2d 1130, 1132 (4th Cir. 1988).

[79] Id. at 1134.

[80] Id.

[81] See Alonso, 178 Wn. App. at 746; Dominguez-Curry, 424 F.3d at 1038-40; McGinest, 360 F.3d at 1123; Laxton v. Gap Inc., 333 F.3d 572, 584 (5th Cir. 2003); Russell v. McKinney Hosp. Venture, 235 F.3d 219, 226-27 (5th Cir. 2000); Hunt v. City of Markham, 219 F.3d 649, 652-53 (7th Cir. 2000); Llampallas v. Mini-Circuits, Lab, Inc., 163 F.3d 1236, 1246-49 (11th Cir. 1998); Shager v. Upjohn Co., 913 F.2d 398, 405 (7th Cir. 1990); DeHorney v. Bank of Am. Nat'l Trust & Sav. Ass'n, 879 F.2d 459, 468 (9th Cir. 1989).

[82] Dominguez-Curry, 424 F.3d at 1039-40.

23

conclude that the employee exhibiting discriminatory animus was in a position to influence the employment decision.[83]

For example, in Ercegovich v. Goodyear Tire & Rubber Co., Edward Ercegovich's employer, Goodyear, eliminated Ercegovich's position and denied him the opportunity to transfer to available positions.[84] Ercegovich sued based on age discrimination, arguing that high ranking employees in his division, including the vice president overseeing the division, made age-based discriminatory statements.[85] The district court concluded that the statements were irrelevant because they were not made by the decision-maker.[86]

The Sixth Circuit Court of Appeals disagreed, stating the vice president "was in a position to shape the attitudes, policies, and decisions" of the decision-maker.[87] The court then concluded that "a genuine issue of fact exists as to whether [the vice president] was involved in the employment decisions adverse to Ercegovich."[88]

---

[83] Ercegovich v. Goodyear Tire & Rubber Co., 154 F.3d 344, 355 (6th Cir. 1998).

[84] 154 F.3d 344, 348 (6th Cir. 1998).

[85] Id. at 354.

[86] Id.

[87] Id. at 355.

[88] Id.

The court also "assume[d] for purposes of summary judgment that [the vice president] did in fact play a meaningful role in those decisions."[89] Thus, the court ultimately reversed the district court's granting of summary judgment on that claim, concluding that the vice president's remarks "support[ed] the inference that age-discriminatory animus entered in Goodyear's alleged decision to deny Ercegovich the opportunity to transfer to available positions."[90]

Here, Goode relies only on direct evidence to support his claim. He specifically relies on Burke's discriminatory comments to and about African American employees, such as her discriminatory comments to Hill and other African American employees as described earlier.

Because these comment are discriminatory, they are direct evidence of discrimination towards the class to which Goode belongs.[91] Burke's comments were based on the employees' skin color, which is "probative of [her] discriminatory intent" towards Goode, even if she directed these comments toward other African American employees.[92]

Additionally, a reasonable jury could conclude that Burke was in a position to influence the adverse employment action as district superintendent. Specifically, Goode discussed his exclusion from the decision-making process with assistant principal Daryl Wright. Wright allegedly told Goode that "nothing

---

[89] Id.

[90] Id. at 356, 358.

[91] Alonso, 178 Wn. App. at 744.

[92] Dominguez-Curry, 424 F.3d at 1038.

w[ould] change" because Burke was "in charge." Thus, a genuine issue of material fact exists as to whether Burke was involved in the adverse employment action and whether Goode's race was a substantial factor motivating the adverse action. Accordingly, summary judgment was improper on Goode's disparate treatment claim regarding this aspect of his relations with Briggs.

## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

Goode argues that the trial court erred in dismissing his negligent infliction of emotional distress claim. We disagree.

An employee may recover damages for emotional distress in an employment context but only if the factual basis for the claim is distinct from the factual basis for the discrimination claim.[93] The employee must also establish emotional distress by "'objective symptomatology,'" which means the distress is "'susceptible to medical diagnosis and proved through medical evidence.'"[94]

Here, the trial court dismissed Goode's negligent infliction of emotional distress claim because he made "no showing that the factual basis for such a claim [wa]s distinct from the factual basis for his discrimination claim."[95]

This was proper because Goode explicitly attributes his distress "to the different treatment" he received and the District's "discriminatory environment."

---

[93] Haubry v. Snow, 106 Wn. App. 666, 678, 31 P.3d 1186 (2001).

[94] Kumar v. Gate Gourmet, Inc., 180 Wn.2d 481, 505-06, 325 P.3d 193 (2014) (first quoting Strong v. Terrell, 147 Wn. App. 376, 387, 195 P.3d 977 (2008); then quoting Hegel v. McMahon, 136 Wn.2d 122, 135, 960 P.2d 424 (1998)).

[95] Clerk's Papers at 2077.

Thus, "there is no separate compensable claim because the factual basis for the emotional distress claim is the same as the [hostile work environment and disparate treatment] claim[s]."[96]

Goode argues that there are "sufficient questions of fact" whether he satisfied the objective symptomology requirement for this claim. He argues that his treating physician's declaration should have defeated the District's motion for summary judgment. He is mistaken.

Although Goode's doctor's declaration may satisfy the objective symptomology requirement for this claim, Goode does not overcome the first hurdle in establishing this claim.[97] This claim must be distinct from the factual basis for the discrimination claim.[98] That is simply not the case here. The dismissal of this claim was proper.

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Goode also asserted in his complaint a claim for intentional infliction of emotional distress. The trial court dismissed this claim on summary judgment. But Goode does not discuss this on appeal. We deem the claim abandoned.[99]

---

[96] Haubry, 106 Wn. App. at 678.

[97] See id.

[98] Id.

[99] See Podbielancik v. LPP Mortg. Ltd., 191 Wn. App. 662, 668, 362 P.3d 1287 (2015); RAP 10.3(a)(6).

27

## ATTORNEY FEES

Each party requests attorney fees. Goode requests attorney fees pursuant to the WLAD under RCW 49.60.030(2). The District requests fees based on its claim that this appeal is frivolous.

Goode's request for fees is premature because he has not, as yet, prevailed under the provisions of the WLAD statute. Thus, we deny without prejudice this request.

The District bases its request for fees on RAP 18.9(a), which provides for attorney fees if a party "files a frivolous appeal." "An appeal is frivolous if there are no debatable issues [upon] which reasonable minds might differ and it is so totally devoid of merit that there is no reasonable possibility of reversal."[100]

Because there is no basis to conclude this appeal is frivolous, an award to the District is not merited.

We affirm in part and reverse in part. We affirm the trial court's grant of summary judgment on the negligent and intentional infliction of emotional distress claims. We reverse the trial court's grant of summary judgment on both of the WLAD claims. We deny both parties' requests for attorney fees on appeal.

_Cox, J._

WE CONCUR:

---

[100] Ha v. Signal Elec., Inc., 182 Wn. App. 436, 456, 332 P.3d 991 (2014), review denied, 182 Wn.2d 1006 (2015).

28