FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2017 SEP 11 AM 10: 27

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| LOGAN COLES, individually, and CODY LORD, individually, | ) ) ) | No. 75471-8-I |
| | ) ) | DIVISION ONE |
| Appellants, | ) ) | |
| v. | ) ) ) | |
| KAM-WAY TRANSPORTATION, a Washington state corporation; KAM SIHOTA, individually and jointly with HARNEET SIHOTA, husband and wife and their marital community; and DORI BINDER, individually and jointly with JOHN DOE BINDER, husband and wife and their marital community, | ) ) ) ) ) ) ) ) ) | UNPUBLISHED FILED: September 11, 2017 |
| Respondents. | ) ) | |

Cox, J. — Logan Coles and Cody Lord appeal the order granting summary judgment to Kam-Way Transportation, dismissing their claims of violations of the Washington Law Against Discrimination. The sole claims before us in this appeal are the hostile work environment and retaliation claims. We deem abandoned the other claims asserted below. There are no genuine issues of material fact for the retaliation claims. But there are genuine issues of material

fact for the hostile work environment claims. We affirm in part, reverse in part, and remand.

This case arises from the employment and eventual termination of employment of Coles and Lord by Kam-Way Transportation. Coles and Lord are two men in a committed intimate relationship. They were both employed by Kam-Way for a few years. Kam-Way terminated their employment within several days of each other in March 2011. The circumstances surrounding their departures are disputed.

Coles and Lord commenced this suit against Kam-Way almost three years after their March 2011 termination. They both asserted several causes of action: hostile work environment, retaliation, wrongful termination, negligent supervision, and infliction of emotional distress.

Kam-Way moved for summary judgment on the basis that these claims were time-barred. The trial court denied this motion. Kam-Way has not appealed that ruling.

Kam-Way later moved for summary judgment, based on other arguments, on the claims that are before us on appeal. The trial court granted this motion. The court also denied the motion for reconsideration of Coles and Lord.

They appeal.

## WASHINGTON LAW AGAINST DISCRIMINATION

Coles and Lord argue that the trial court improperly dismissed their Washington Law Against Discrimination (WLAD) claims on summary judgment. We agree, in part.

2

Summary judgment is proper "only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."[1] There is a genuine issue of material fact if reasonable minds could differ on the facts controlling the litigation outcome.[2] We consider "the evidence and all reasonable inferences from the evidence in the light most favorable to the nonmoving party."[3]

We review de novo a trial court's grant of summary judgment.[4]

In WLAD cases, granting summary judgment to an employer is seldom appropriate due to the difficulty of proving a discriminatory motivation.[5]

*Hostile Work Environment*

Coles and Lord argue that there are genuine issues of material fact regarding their hostile work environment claims and that Kam-Way is not entitled to judgment as a matter of law. We agree.

---

[1] Scrivener v. Clark Coll., 181 Wn.2d 439, 444, 334 P.3d 541 (2014); see also CR 56(c).

[2] Knight v. Dep't of Labor & Indus., 181 Wn. App. 788, 795, 321 P.3d 1275 (2014) (quoting Ranger Ins. Co. v. Pierce County, 164 Wn.2d 545, 552, 192 P.3d 886 (2008)).

[3] Keck v. Collins, 184 Wn.2d 358, 370, 357 P.3d 1080 (2015).

[4] Id.

[5] Scrivener, 181 Wn.2d at 445.

The WLAD, codified at chapter 49.60 RCW, governs hostile work environment claims based on discrimination.[6] Because chapter 49.60 RCW substantially parallels Title VII, federal discrimination cases are persuasive.[7]

RCW 49.60.180(3) provides that an employer may not discriminate against any person due to the person's sexual orientation. To establish a hostile work environment claim, a plaintiff must show that "'(1) the harassment was unwelcome, (2) the harassment was because [plaintiff was a member of a protected class], (3) the harassment affected the terms and conditions of employment, and (4) the harassment is imputable to the employer.'"[8]

Washington courts permit hostile work environment claims "based on acts that individually may not be actionable but together constitute part of a unified whole comprising a hostile work environment."[9] For example, an employee satisfies the third element of a hostile work environment claim if, considering the totality of the circumstances, the harassment is sufficiently pervasive to alter the employee's employment conditions and create an abusive working environment.[10]

---

[6] Estevez v. Faculty Club of Univ. of Wash., 129 Wn. App. 774, 790, 120 P.3d 579 (2005).

[7] Antonius v. King County, 153 Wn.2d 256, 266, 103 P.3d 729 (2004).

[8] Loeffelholz v. Univ. of Wash., 175 Wn.2d 264, 275, 285 P.3d 854 (2012) (alteration in original) (quoting Antonius, 153 Wn.2d at 261).

[9] Antonius, 153 Wn.2d at 268.

[10] Loeffelholz, 175 Wn.2d at 275.

*Unwelcome Harassment*

Coles and Lord argue that they established this element of their hostile work environment claims. We agree.

Harassment is conduct an employee finds offensive.[11] Discriminatory or derogatory comments, mockery, or insults towards the employee generally constitute harassment.[12] Asserting subjective offense to innocuous comments, without acknowledging how the comment was discriminatory, is not sufficient to prevent summary judgment dismissal.[13]

"[I]f . . . hostility [towards an employee's sexual orientation] pervades a workplace, a plaintiff may establish a violation of Title VII, even if such hostility was not directly targeted at the plaintiff."[14]

Here, Coles testified at deposition to the treatment that he considered harassing. His claims primarily focus on the actions and comments by Dori Binder, Kam-Way's CFO. Specifically, he testified that soon after she arrived and began supervising him, he and Lord jointly called to her attention a work

---

[11] Glasgow v. Georgia-Pac. Corp., 103 Wn.2d 401, 406, 693 P.2d 708 (1985).

[12] See, e.g., Loeffelholz, 175 Wn.2d at 275; Antonius, 153 Wn.2d at 259; Alonso v. Qwest Commc'ns Co., LLC, 178 Wn. App. 734, 740, 315 P.3d 610 (2013); Davis v. Fred's Appliance, Inc., 171 Wn. App. 348, 362, 287 P.3d 51 (2012); Davis v. W. One Auto. Grp., 140 Wn. App. 449, 453, 457, 166 P.3d 807 (2007).

[13] See Crownover v. Dep't of Transp., 165 Wn. App. 131, 144-45, 265 P.3d 971 (2011).

[14] See McGinest v. GTE Serv. Corp., 360 F.3d 1103, 1117 (9th Cir. 2004).

matter. Coles stated that she exhibited a "very aggressive tone" with them.[15]

Lord also described Binder's reaction as rude and crass, which made him feel that he was being treated differently than other employees.[16] Although they did not believe at the time that this treatment was due to their sexual orientation, they later concluded that this and other harassing treatment by her were due to their sexual orientation.[17]

Another example of her allegedly harassing behavior involved an incident where she "called out" Coles and Lord for taking morning rest breaks from work. This incident occurred during a "pillar meeting" involving Binder, Coles, Lord, and others in the management group. The "pillar" group was comprised of a few employees tasked to create ideas for Kam-Way's growth and development. Lord testified that this treatment was directed at him and Coles due to their sexual orientation because other employees, who took similar breaks, were not challenged.[18]

A further example involving Binder occurred when Kam-Way's CEO, Kamaljit Sihota, terminated Lord's employment in March 2011 during a meeting with Lord and Binder. Lord attributed the firing to Binder's homophobic sentiment.[19]

---

[15] Clerk's Papers at 236.

[16] Id. at 180, 261-62.

[17] Id. at 181.

[18] Id.

[19] Id. at 188-89.

Lord also testified to discriminatory acts and comments by others at Kam-Way. Specifically, Kamaljit forwarded an e-mail to a group of employees, including Lord, in 2010. The e-mail contained a derogatory phrase regarding homosexuals.

Lord also testified that Kamaljit inappropriately discussed with him his sexual exploits with women.

Coles also testified at deposition to harassment based on sexual orientation. He likewise testified to the incident at the "pillar group" meeting in which Binder "called [them] out" for taking morning breaks when others were not similarly called out for taking breaks. These and other incidents involving Binder led him to believe that her actions were directed to him as "a direct reflection of [him] being gay."[20]

Coles also saw the e-mail to which Lord testified where a derogatory term for homosexuals was used.[21]

Additionally, Kam-Way COO, Herman Sihota, referred to Coles by a derogatory name outside his presence after his interview. Herman also made derogatory remarks or jokes in his presence stating, for example, "don't be gay."

There is also other evidence in this record regarding this element of the hostile work environment claims. Sherrie Determan, a former employee of Kam-Way, testified that:

---

[20] Id. at 240.

[21] Id. at 240-41.

> Binder would constantly target Coles, nit-picking every detail of his work, calling him out in front of other employees for alleged mistakes. Based on Binder's treatment of Coles, it was clear to me that Binder had an issue with Coles. Binder did not target other heterosexual employees in the same manner.[22]

Overall, the conduct we just discussed constitutes unwelcome harassment because Coles and Lord each found it to be offensive and on the basis of their sexual orientation. Thus, they established this element of their hostile work environment claims. Notably, Kam-Way does not dispute this in its briefing.

*Harassment of Protected Class*

Coles and Lord also argue that they established this element of their hostile work environment claim. We again agree.

To establish this element, an employee must produce evidence supporting a reasonable inference that his or her protected class status was the motivating factor for the harassing conduct.[23] The employee "must prove the conduct would not have occurred had the employee been [outside of the protected class]."[24] A jury could reasonably conclude that subjecting an employee to "derogatory [sexual orientation] name-calling [i]s motivated by [discriminatory] reasons."[25]

---

[22] Id. at 432, ¶14.

[23] Alonso, 178 Wn. App. at 749.

[24] Crownover, 165 Wn. App. at 146.

[25] Alonso, 178 Wn. App. at 750.

A work environment may be considered hostile even if offensive comments are not made directly to the employee.[26] "[W]hen evidence establishes the employer's animus toward the class to which the plaintiff belongs, the inference to the fact of discrimination against the plaintiff is sufficiently small . . . ."[27] Additionally, "[i]f [sexual orientation] animus motivates a harasser to make provocative comments in the presence of an individual in order to anger and harass him, such comments are highly relevant . . . , regardless of the identity of the person to whom the comments were superficially directed."[28] Thus, a reasonable juror could infer that an employee's protected class status motivated an employer's harassing comment to a group of employees if the employer "conceivably intended it to have special meaning" for that employee within the group.[29]

Here, Coles and Lord produced evidence supporting a reasonable inference that their sexual orientation motivated some of the harassing conduct.

First, both Coles and Lord testified at deposition regarding interactions with Binder and why they believed they were discriminatory on the basis of their sexual orientation. In Binder's deposition, she testified either to not recalling

---

[26] See Equal Emp't Opportunity Comm'n v. Swissport Fueling, Inc., 916 F. Supp. 2d 1005, 1023 (D. Ariz. 2013).

[27] Coghlan v. Am. Seafoods Co. LLC., 413 F.3d 1090, 1095 n.6 (9th Cir. 2005).

[28] McGinest, 360 F.3d at 1118.

[29] See Loeffelholz, 175 Wn.2d at 276.

certain incidents or that they were not based on discrimination. This conflict in evidence is to be resolved by a trial, not by summary judgment.

Furthermore, the e-mail that Kamaljit forwarded to a group of employees, including Lord, contained a derogatory phrase about homosexuals. Kamaljit explained that he sent the e-mail because it contained a photograph that he wanted the employees to see. He later sent an e-mail to the employees to "disregard" it when he "realized" that the e-mail contained the derogatory phrase.

That Kamaljit may have inadvertently sent an e-mail that was derogatory to homosexuals does not obviate his doing so in the first place. Lord received the e-mail and showed it to Coles. The harm was done. A jury could reasonably conclude that it subjected them to derogatory name-calling specific to homosexuals, the protected class to which they belong. A jury could also reasonably infer that Kamaljit "conceivably intended it to have special meaning" to Lord.[30]

Lastly, a reasonable inference can also be made that Coles's sexual orientation motivated Herman's harassing conduct. Coles and Lord presented evidence that Herman specifically referred to Coles by a derogatory name outside his presence. Herman also made derogatory remarks in his presence stating, for example, "don't be gay."

Thus, on this record, Coles and Lord presented sufficient evidence to raise a genuine issue of material fact on this element of their claims.

---

[30] Id.

10

Kam-Way argues that Herman's conduct is "irrelevant" because Coles was not present at the time it occurred. This argument is unpersuasive.

Coles and Lord presented evidence that Herman made derogatory jokes or remarks in Coles's presence. As for the comment made outside Coles's presence, an employee's second-hand knowledge of a derogatory comment or joke can impact the work environment.[31] "[A]n employee who knows that [his] boss is saying things of this sort behind [his] back may reasonably find [his] working environment hostile."[32] Further, whether Coles became aware of this comment during his employment is a factual issue that should be resolved by a trier of fact.[33] More significantly, whether the incidents that Coles "experienced more directly 'would reasonably be perceived, and [were] perceived, as hostile or abusive,'" in light of this comment, are factual issues that should be resolved by a trier of fact.[34]

*Harassment Affecting Employment Conditions*

Coles and Lord also argue that they established this element of their hostile work environment claim. We agree.

---

[31] See Schwapp v. Town of Avon, 118 F.3d 106, 111 (2d Cir. 1997).

[32] Torres v. Pisano, 116 F.3d 625, 633 (2d Cir. 1997).

[33] Schwapp, 118 F.3d at 112.

[34] Id. (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 22, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993)).

A hostile work environment occurs over time and is "'based on the cumulative effect of individual acts.'"[35] "Casual, isolated[,] or trivial manifestations of a discriminatory environment do not affect the terms or conditions of employment to a sufficiently significant degree to violate the law."[36]

An employee satisfies this element if, considering the totality of the circumstances, the harassment is sufficiently pervasive to alter the employee's employment conditions and create an abusive working environment.[37] The conduct must be "objectively abusive" and subjectively perceived as abusive or offensive by the employee.[38] In evaluating the objective hostility of a work environment, courts consider the "frequency and severity of harassing conduct, whether it was physically threatening or humiliating, or merely an offensive utterance, and whether it unreasonably interfered with the employee's work performance."[39] "'[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment.'"[40]

---

[35] Loeffelholz, 175 Wn.2d at 273 (internal quotation marks omitted) (quoting Antonius, 153 Wn.2d at 264).

[36] Glasgow, 103 Wn.2d at 406.

[37] Loeffelholz, 175 Wn.2d at 275.

[38] Clarke v. Att'y Gen. Office, 133 Wn. App. 767, 787, 138 P.3d 144 (2006).

[39] Alonso, 178 Wn. App. at 751.

[40] Nichols v. Azteca Rest. Enters., Inc., 256 F.3d 864, 872 (9th Cir. 2001) (alteration in original) (quoting Faragher v. City of Boca Raton, 524 U.S. 775, 788, 118 S. Ct. 2275, 141 L. Ed. 2d 662 (1998)).

Additionally, the conduct's level of severity or seriousness varies inversely with the conduct's pervasiveness or frequency.[41] For example, "'mere utterance of an . . . epithet which engenders offensive feelings in an employee,' . . . does not sufficiently affect the conditions of employment to implicate Title VII."[42] Use of a slur towards an employee "on three separate occasions does not, as a matter of law, reach the level of severity sufficient to create an issue of fact as to whether a hostile work environment existed."[43] But a "sustained campaign of taunts, directed at [the employee] and designed to humiliate and anger him" is sufficiently severe and pervasive to alter his employment conditions.[44]

Further, a work environment may be hostile even if offensive comments are not made directly to the employee.[45] But an employee's overhearing of sporadic, offensive remarks directed at others in the same protected class is not enough.[46]

---

[41] McGinest, 360 F.3d at 1113.

[42] Harris, 510 U.S. at 21 (1993) (citation omitted) (quoting Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 67, 106 S. Ct. 2399, 91 L. Ed. 2d 49 (1986)).

[43] Equal Emp't Opportunity Comm'n, 916 F. Supp. 2d at 1022; see also Fred's Appliance, Inc., 171 Wn. App. at 362.

[44] Nichols, 256 F.3d at 873.

[45] Equal Emp't Opportunity Comm'n, 916 F. Supp. 2d at 1023.

[46] See Bainbridge v. Loffredo Gardens, Inc., 378 F.3d 756, 760 (8th Cir. 2004).

Whether offensive comments affect employment conditions is a factual question.[47] Humiliation, emotional distress, absence from work, or "friction" with other employees are sufficient to create an "inference" that such reactions resulted from a hostile work environment.[48]

The employee need not prove that the harassment impaired his or her "'tangible productivity . . . .' It suffices to prove that a reasonable person subjected to the discriminatory conduct would find . . . that the harassment so altered working conditions as to 'ma[k]e it more difficult to do the job.'"[49]

Here, Coles and Lord presented sufficient evidence to raise a genuine issue of material fact on this element of their claims.

As to Binder, a rational jury could reasonably find that her actions and comments were sufficiently pervasive to alter their employment conditions and create an abusive working environment. Coles and Lord testified in deposition that they left the "pillar" group due to a conflict with Binder on the day she joined the group. Lord explained that during the pillar meeting, Binder "called [them] out" about their breaks and "made it very obvious [that] she didn't want [them] to be involved . . . any longer." Coles similarly testified that Binder "singled [them]

---

[47] Alonso, 178 Wn. App. at 751.

[48] See W. One Auto. Grp., 140 Wn. App. at 458; see also Glasgow, 103 Wn.2d at 403; Alonso, 178 Wn. App. at 752.

[49] Harris, 510 U.S. at 25 (Ginsburg, J. concurring) (some alterations in original) (citation omitted) (quoting Davis v. Monsanto Chem. Co., 858 F.2d 345, 349 (6th Cir. 1988)).

out for taking inappropriate breaks" and that they felt uncomfortable in the group. He also testified that "[t]here was a definite clash" with Binder.

Both Coles and Lord testified to their beliefs that Binder targeted them during this meeting due to their sexual orientation. And despite Kamaljit's testimony that he terminated Coles's and Lord's employment, Coles and Lord testified to their beliefs that Binder was involved in that termination due to their sexual orientation.

Additionally, a rational jury could reasonably find that Herman's derogatory jokes or remarks in and outside Coles's presence were pervasive enough to alter his employment conditions. The record shows that Herman made a single reference to Coles by a derogatory name outside his presence. The record does not show the dates or frequency of Herman's other derogatory jokes or remarks. But an employee testified by declaration that Herman "constantly" made homosexual jokes or callous remarks in Coles's presence.

The record does not show that Coles alleged such remarks below, and it does not show whether he heard them or obtained second-hand knowledge of them. But as we previously stated, whether Coles became aware of Herman's derogatory jokes or remarks during his employment is a factual issue that should be resolved by a trier of fact.[50] More significantly, whether the incidents Coles "experienced more directly 'would reasonably be perceived, and [were] perceived, as hostile or abusive,'" in light of these derogatory jokes or remarks,

---

[50] Schwapp, 118 F.3d at 112.

15

are factual issues that should be resolved by a trier of fact.[51] A rational jury could reasonably find that these "constant" discriminatory comments were pervasive enough to alter Coles's employment conditions.

Lastly, although the e-mail that Kamaljit forwarded may not have sufficiently affected Coles's and Lord's employment conditions, a rational jury could reasonably find that all of these incidents, taken together, "affect[ed] the terms or conditions of [their] employment to a sufficiently significant degree to violate the law."[52]

Viewing this evidence in the light most favorable to Coles and Lord and considering the totality of the circumstances that we have discussed, we conclude that the trial court improperly granted summary judgment on their hostile work environment claims. We specifically conclude that Coles and Lord established genuine issues of material fact whether Herman's derogatory jokes or remarks, combined with the actions of Binder and others at Kam-Way, were sufficiently pervasive to alter Coles's and Lord's employment conditions.

Kam-Way argues that Coles and Lord failed to satisfy this element because they experienced "minor" and "sporadic" incidents of discriminatory conduct.[53] It correctly argues that either "hostile" or "inappropriate" conduct is

---

[51] Id. (quoting Harris, 510 U.S. at 22).

[52] Glasgow, 103 Wn.2d at 406.

[53] Brief of Respondents at 29-33.

immaterial without evidence that such conduct is motivated by, in this case, homophobic animus.[54]

Whether there is proof of homophobic animus is the question. The trial court's letter ruling on Coles's hostile work environment claim concludes that he failed to show any genuine issues of material fact for the third element of his hostile work environment claim.[55] The narrow question for this element is whether the discriminatory conduct is sufficiently pervasive that it alters the conditions of employment and creates a hostile working environment. In its analysis, the trial court cited portions of Coles's deposition testimony.[56]

While these cited excerpts are, admittedly, vague whether Binder's actions were illegally discriminatory, they do not paint a complete picture of this record. A close and fuller examination of the whole record regarding her activities— which we discussed previously in this opinion—shows there are genuine issues of material fact for trial.

The letter ruling that addresses Lord's hostile work environment claim also cites his deposition testimony. But a close and fuller reading of the record— which we also discussed previously in this opinion—shows there are also genuine issues of material fact for trial.

---

[54] Id. at 24-27.

[55] Clerk's Papers at 501.

[56] Id. at 502-03.

In sum, we read this record differently than the trial court did when granting summary judgment of dismissal of this case.

At oral argument of this case, Kam-Way stressed the importance of MacDonald v. Korum Ford.[57] Having closely reviewed that case, we conclude that it does not require a different result than what we reach here.

There, the main focus of that Division Two case was whether the trial court had properly sanctioned an attorney under CR 11 for pursuing a WLAD claim after the deposition testimony of the attorney's client.[58] The facts of that case are unlike those here. Thus, Kam-Way does not appear to argue that the case is important for that reason. Rather, it argues that Division Two of this court cited a number of cases for the purpose of comparing whether the facts of the case before it were sufficiently similar to the cited cases to show that the client's claim was proper. Division Two of this court concluded that the case before it was unlike the cited cases.

MacDonald is not helpful. While the cases cited there speak for themselves, each discrimination case is factually different. So we conclude that a comparison of the cases cited there to this one, something Kam-Way has not done in its briefing, is not helpful to our analysis.

---

[57] 80 Wn. App. 877, 912 P.2d 1052 (1996).

[58] Id. at 884-85.

18

*Imputing Harassment to Employer*

Coles and Lord argue that harassing conduct is imputable to Kam-Way. We agree.

Harassment may be imputed to the employer in one of two ways.[59] First, the harassment may be automatically imputed if a manager participated in the harassment.[60] In this situation, "the manager's rank in the company's hierarchy must be high enough that the manager is the employer's alter ego."[61] For summary judgment purposes, employees with authority to affect employee hours, wages, and working conditions qualify as managers.[62] "[A] manager is something more than a supervisor."[63]

Harassment may also be imputed to the employer if the harasser is the employee's supervisor and the employer "'authorized, knew, or should have known of the harassment and . . . failed to take reasonably prompt and adequate corrective action.'"[64] A supervisor can hire, fire, and promote an employee.[65]

---

[59] Fred's Appliance, Inc., 171 Wn. App. at 362.

[60] See id.

[61] Id. at 363.

[62] Alonso, 178 Wn. App. at 752.

[63] Henningsen v. Worldcom, Inc., 102 Wn. App. 828, 838, 9 P.3d 948 (2000).

[64] Fred's Appliance, Inc., 171 Wn. App. at 362 (alteration in original) (quoting Glasgow, 103 Wn.2d at 407).

[65] Vance v. Ball State Univ., 133 S. Ct. 2434, 2443, 186 L. Ed. 2d 565 (2013).

Here, Kam-Way does not dispute that Coles and Lord satisfied this element. Kam-Way is a family business, founded by Kamaljit and his wife. Kamaljit is the CEO and terminated Coles's and Lord's employment. Kamaljit's brother, Herman, worked as the COO and trained Coles. Binder supervised Coles, worked as the CFO, and helped Herman develop human resources policies and procedures. She and Herman also rated Coles's work performance.

Kamaljit, Herman, and Binder rank high enough in the Kam-Way hierarchy to constitute Kam-Way's "alter ego."[66] Thus, their conduct can be automatically imputed to Kam-Way. Kam-Way does not argue otherwise.

Overall, Coles and Lord established genuine issues of material fact for all four elements of their hostile work environment claims. Accordingly, the trial court improperly granted summary judgment on these claims.

### Retaliation

Coles and Lord also argue that the trial court erroneously dismissed their retaliation claims. We disagree.

RCW 49.60.210(1) prohibits discrimination against an employee "because he or she has opposed any practices forbidden by this chapter, or because he or she has filed a charge . . . under [the WLAD]."

---

[66] Fred's Appliance, Inc., 171 Wn. App. at 363.

The <u>McDonnell Douglas Corp. v. Green</u>[67] burden-shifting framework applies to retaliation claims.[68] Under this framework, the plaintiff must initially establish a prima facie case of discrimination to survive summary judgment.[69]

To establish a prima facie case for retaliation, "an employee must show that (1) he engaged in a statutorily protected activity, (2) the employer took an adverse employment action against the employee, and (3) there is a causal connection between the employee's activity and the employer's adverse action."[70]

The absence of a genuine issue of material fact for a necessary element of a claim makes factual disputes over other elements immaterial for summary judgment purposes.[71]

Here, Coles and Lord fail to establish a prima facie case. The trial court properly granted summary judgment.

*Statutorily Protected Opposition Activity*

Coles and Lord argue that they engaged in protected activity. We disagree.

---

[67] 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).

[68] See <u>Hollenback v. Shriners Hosps. for Children</u>, 149 Wn. App. 810, 823, 206 P.3d 337 (2009).

[69] See <u>Scrivener</u>, 181 Wn.2d at 446.

[70] <u>Boyd v. Dep't of Soc. & Health Servs.</u>, 187 Wn. App. 1, 11-12, 349 P.3d 864 (2015).

[71] See <u>Young v. Key Pharm., Inc.</u>, 112 Wn.2d 216, 225, 770 P.2d 182 (1989).

"An employee engages in WLAD-protected activity when he opposes employment practices forbidden by antidiscrimination law or other practices that he reasonably believed to be discriminatory."[72] "A general complaint about an employer's unfair conduct does not rise to the level of protected activity in a discrimination action under WLAD absent some reference to the plaintiff's protected status."[73]

Here, Coles and Lord argue that they engaged in protected activity by raising concerns about Binder's conduct. They claim that they specifically raised concerns about Binder's harassment and her "targeting of Coles."

But this record does not show that they complained about discrimination based on their sexual orientation. Although they testified to their beliefs that Binder discriminated against them due to their sexual orientation, the record does not show that they mentioned discrimination or their sexual orientation in these discussions. Thus, Coles and Lord fail to show that they engaged in WLAD-protected activities.

Their reply brief contains a list of complaints made together with citations to the record. Noticeably absent from this is any mention of sexual orientation discrimination. This is fatal to their claims of retaliation because an employee must demonstrate his or her reasonable belief that the employment practice is actually discriminatory towards their protected status.[74] They fail to do so.

---

[72] Alonso, 178 Wn. App. at 754.

[73] Id.

[74] See id.

22

Because they fail to establish a genuine issue of material fact for the first necessary element of their retaliation claims, we need not address the other two.[75]

## STATUTE OF LIMITATATIONS

Kam-Way argues that the statute of limitations bars the hostile work environment claims. We do not reach this issue.

First, the record reflects that the trial court denied summary judgment to Kam-Way on this issue. Kam-Way did not cross-appeal that adverse ruling. Thus, the propriety of that order is not before us.

Second, we reject Kam-Way's alternative argument: that we may affirm the grant of summary judgment of dismissal on the order that is properly before us on the alternative ground that the statute of limitations bars these claims. The principle that we may affirm on any ground supported by the record does not apply here. We cannot be certain what the record contained at the time of denial of summary judgment based on the statute of limitations.

## MOTION FOR RECONSIDERATION

Coles and Lord also argue that the trial court abused its discretion in denying their CR 59 motion and striking certain evidence in support of that motion. Because we reverse and remand for further proceedings on the hostile work environment claims, we need not address this argument.

---

[75] Id.

## ABANDONED CLAIMS

Coles and Lord assign error to the trial court's dismissal of their other claims: wrongful termination, respondeat superior, negligent supervision, and emotional distress. Because they do not sufficiently discuss these claims in their briefing in this appeal, we deem these claims abandoned.[76]

## ATTORNEY FEES ON APPEAL

Coles and Lord seek an award of attorney fees on appeal pursuant to RCW 49.60.030(2). We deny this request, without prejudice, because it is premature.

RCW 49.60.030(2) provides that a WLAD claimant can "recover the actual damages sustained," together with the suit costs, including reasonable attorney fees.

A party must prevail on his or her claim to receive attorney fees.[77] "Where a party has succeeded on appeal but has not yet prevailed on the merits, the court should defer to the trial court to award attorney fees."[78]

Here, Coles and Lord have not yet prevailed because there has been no trial. They are "not yet entitled to attorney fees under RCW 49.60.030(2), if at all . . . [because] this case has not yet been tried on the merits."[79] Accordingly, we

---

[76] See Podbielancik v. LPP Mortg. Ltd., 191 Wn. App. 662, 668, 362 P.3d 1287 (2015); RAP 10.3(a)(6).

[77] RAP 14.2.

[78] Riehl v. Foodmaker, Inc., 152 Wn.2d 138, 153, 94 P.3d 930 (2004).

[79] Dowler v. Clover Park Sch. Dist., 172 Wn.2d 471, 486, 258 P.3d 676 (2011).

deny this request, without prejudice, as premature. The trial court will decide whether such fees should be awarded following trial.

We affirm the trial court's grant of summary judgment on the retaliation claims. We reverse the trial court's dismissal of the hostile work environment claims and remand for further proceedings. We deny, without prejudice, the request for attorney fees on appeal as premature.

_Cox, J._

WE CONCUR:

_Trickey, A.C.J._        _Schindler, J._